## ALSMAN v. WALTERS.

[No. 22,728. Filed November 21, 1914. Rehearing denied March 17, 1916.]

1. ESTATES.—*Fee in Abeyance.*—Though there is common-law authority for the theory that a fee may be in abeyance, such theory was ever odious and never recognized unless in cases of extreme necessity. p. 568.
2. WILLS.—*Gift to Classes.—Intervening Life Estate.*—Where a gift to a class is immediate, the persons constituting the class are ascertained as of the date of the death of the testator; but where a life estate is carved out, with a gift over to children of the life tenant, the gift embraces the children living at the testator's death and also those who may come into existence during the life tenancy and in such case the children alive at testator's death take an immediately vested interest subject to a diminution of their shares to let in such others as may be born during the life tenancy. p. 568.
3. WILLS.—*Construction.—"Child".*—The meaning of the word "child" as used in a will is not broad enough to include grandchild. p. 569.
4. ESTATES.—*Inheritance.—"Fee Simple".*—A "fee simple" is the entire and absolute interest and property in land, and the word

"simple" as used in the term adds nothing to the word "fee" stand-
ing by itself, but excludes all qualification or restriction as to the
persons who may inherit it as heirs. p. 569.

5. WILLS.—*Construction.*—*Intention of Testator.*—In ascertaining a
testator's intent consideration must be given to all the words in the
will, and the court is not at liberty to heed one phrase and disre-
gard another. p. 570.

6. WILLS.—*Construction.*—*Vesting of Estates.*—The law looks with
disfavor on postponing estates, and, in the absence of a clear mani-
festation of a contrary intent, presumes that words of postponement
relate to the beginning of the enjoyment of the remainder and not to
the vesting of the estate; and it favors the vesting of remainders
absolutely, rather than conditionally or contingently. pp. 570, 582.

7. WILLS.—*Construction.*—In the construction of wills, partial in-
testacy will be avoided if possible. pp. 570, 577.

8. WILLS.—*Construction.*—*Vesting of Estate.*—Under a will devising
land to testator's son for life "and after his death to his children
surviving him in fee simple", the fee simple vested absolutely in the
children of the life tenant at the death of testator, subject to diminu-
tion to let in after-born children. pp. 571, 578, 580, 582.

9. APPEAL.—*Rehearing.*—*Contentions Not Previously Made.*—While
the court on appeal is not bound to consider questions presented for
the first time on petition for rehearing, even if by an appellee, it
may do so to affirm a judgment. p. 576.

10. WILLS.—*Construction.*—*Intention of Testator.*—Where the testa-
tor's intention is obscured by conflicting expressions, it is to be sought
in a rational purpose rather than an irrational one. p. 579.

11. WILLS.—*Construction.*—*Rules of Property.*—Where a rule of
construction, in will cases, has been long and consistently followed
by the courts, it must be deemed a rule of property. p. 582.

From Sullivan Circuit Court; *Charles E. Hender-
son,* Judge.

Action by William R. Walters against Hosea W.
Alsman. From a judgment for plaintiff, the de-
fendant appeals. (Transferred from the Appel-
late Court under subd. 2, §1394 Burns 1914, Acts
1901 p. 565.) *Reversed.*

*W. H. Bridwell* and *Charles H. Bedwell,* for ap-
pellant.

*Charles D. Hunt, Gilbert W. Gambell* and *John
W. Lindley,* for appellee.

*Frank S. Roby, Sol. H. Esarey, Ward H. Watson,*

*Elias D. Salsbury* and *Charles J. Schuh, Amici Curiae.*

Morris, J.—Action by appellee against appellant, and others, to quiet title. There was a trial by the court, with special finding of facts, and conclusion of law. It is contended that the court erred in its legal conclusion. Luke Walters died testate on March 24, 1865. His will, was executed on March 7, 1865. The second item makes certain provisions for the widow. The third item reads as follows:

"I give and bequeath to my son, Francis M. Walters, during his natural life and after his death to his children surviving him in fee simple the following tract of land in the county and state aforesaid to wit: The west half of the northeast quarter of section thirty in township 7 north of range eight west, containing eighty acres."

The fourth item devises 80 acres to decedent's daughter Mary Baker by the same language used in item three. The fifth item devises the residue of the land to four sons and a daughter, without any intervening life estate. The rights of the parties here depend upon the construction of item three of the will. When the will was executed and probated, Francis M. Walters, named in item three, was married and had two children, appellee William R. Walters, and Nancy Walters, who married one Luther Alsman, and was the mother of appellant. She died intestate in 1895, leaving appellant as her sole descendant. After the death of testator said Francis had four other children born to him, viz., Permelia, Eliza, Luther and Luke. The latter died in infancy. Luther died intestate, unmarried and without issue, in 1898. Eliza died intestate, unmarried and without issue

in 1890. Permelia married one Nash and died in 1896, leaving four children, viz., Sarah, Lawrence, Earl and Eliza. Lawrence and Eliza died in childhood. Sarah and Earl, are still living. Francis M. Walters, life tenant, died in 1909. The trial court concluded that appellee, the sole surviving child of the life tenant, is the owner of the land. We infer from appellant's brief that the trial court was of the opinion that the fee of the estate devised remained in abeyance during the life of Francis M. Walters. If so, counsel for appellee do not rely on such theory. They claim that on the death of testator the remainder vested in the children of the life tenant but that the title taken was a conditional fee, which could vest absolutely only on the death of Francis.

The theory that the fee may be in abeyance, or *in nubibus*, is not without common-law authority. 2 Blackstone, Comm. 107; *Illinois Cent. R. Co.* v. *Bosworth* (1890), 133 U. S. 92, 10 Sup. Ct. 231, 33 L. Ed. 550. But it was ever odious and never recognized unless in cases of extreme necessity. 4 Kent, Comm. 257; 1 Fearne, Remainders, 409, 410. Nothing in this will justifies resort to such doctrine, and as appellee does not contend for it, we content ourselves with holding that it has no application.

The gift here was to a class—children—with a life estate intervening. Where such a gift is immediate, the persons constituting the class are ascertained as of the date of the death of the testator. 40 Cyc 1475. Where a life estate is carved out, with a gift over to children of the life tenant, the gift not only embraces the children living at testator's death, but also all who may come into existence during the life tenancy. In such case, the children alive at testator's death take an im-

mediately vested interest subject to a diminution of
their shares to let in such others as may be born dur-
ing the life tenancy. *Biggs* v. *McCarty* (1882), 86
Ind. 352, 364, 44 Am. Rep. 320; 40 Cyc 1480.
Counsel for appellee concede the above rule is cor-
rect, but they contend that at testator's death ap-
pellee and appellant's mother took a conditional
vested remainder; that the shares of said two chil-
dren of testator diminished to let in the after-born
children; that on the death of any child, during the
life tenancy, such deceased child's interest divested,
and immediately vested in brothers and sisters sur-
viving on condition that any such interest should di-
vest if the holder die during the period of the life
tenancy; that appellee, as the sole survivor, owns the
entire estate which was a conditional fee previous to
the death of the life tenant, but on the happening of
that event enlarged into a fee simple absolute. This
theory is based on the assumed intent of the testator,
as evidenced by the following clause in item three:
"After his death to *his children surviving him*, in fee
simple." (Italics ours.) It is claimed that to hold
that an absolute fee vested in any child that did not
survive him, would require the elimination from the
will of the words "surviving him," because
grandchildren are not included within the
definition of "children". This court has fre-
quently decided that the meaning of the word child
is not broad enough to include grandchild. *West* v.
*Rassman* (1893), 135 Ind. 278, 297, 34 N. E. 991.

There are certain well-established rules of con-
struction of wills that are invoked when necessary.
Where the intent of the testator is plain,
there is no occasion for resort to such rules,
because no construction is required. It will
be observed here that while the testator makes the
gift, after the death of Francis, "to his children sur-

viving him" the estate devised is a "fee simple".
Bouvier's dictionary defines fee simple as follows:
"An estate of inheritance.    Co. *Litt.* 1*b*; 2 Bla.
Com. 106.   The word simple adds no meaning to the
word fee standing by itself.   But it excludes all
qualification or restriction as to the persons who may
inherit it as heirs, thus distinguishing it from a fee
tail, as well as from an estate which, though inherit-
able, is subject to conditions or collateral deter-
mination."   This court has quoted with approval the
following definition: "the entire and absolute in-
terest and property in land."   *Brown* v. *Freed*
(1873), 43 Ind. 253, 256.   In ascertaining the
5.   testator's intent consideration must be given
to all the words in the will, and a court is
not at liberty to heed one phrase and disregard
another.

Appellee's    contention    would    appeal    with
much stronger force were the phrase "in fee simple"
eliminated; in such case the term "surviving him"
might better denote an intent to limit the vesting of
the absolute estate in those children only who might
survive the first taker.   However, considering the
language used in its entirety, we are of the opinion
that a clear intention to create such an estate as is
contended for by appellee is not manifested, and,
therefore, it is necessary to resort to established
rules for the construction of ambiguous de-
6.   vises.   Among such rules are the following:
the law looks with disfavor on postponing es-
tates, and the intent so to do, must be clear
7.   and not arise from inference or construction;
it presumes that words postponing the estate
relate to the beginning of the enjoyment of the re-
mainder, and not to the vesting of such an estate;
it favors the vesting of remainders absolutely,
rather than contingently or conditionally; partial

intestacy will be avoided if possible. *Aspey* v. *Lewis* (1899), 152 Ind. 493, 52 N. E. 756; *Moores* v. *Hare* (1896), 144 Ind. 573, 43 N. E. 870; *Myers* v. *Carney* (1908), 171 Ind. 379, 84 N. E. 400; *Campbell* v. *Bradford* (1906), 166 Ind. 451, 77 N. E. 849. In *Aspey* v. *Lewis, supra*, a devise for life was made to testator's wife, followed by this provision: "And I direct further that the above estate that is bequeathed to my wife shall be in the full possession of my only daughter, Maria Louisa, at the death or marriage of my wife, provided she shall be living; and if she is not living, at the death or marriage of my wife then the estate to go to the use of my brothers and sisters or their heirs." The daughter died before the mother. It was held that the daughter took a fee which vested absolutely on testator's death and descends to her heirs. In *Campbell* v. *Bradford, supra*, the following devise was considered: "At the death of my wife, I direct that all my real estate shall descend and go to my two sons * * * and if either of them shall be deceased leaving children surviving him then such child or children shall inherit all their father's interest * * * and in case of either of my sons being deceased and leaving no child or children living then the surviving son shall inherit all my real estate at the death of my wife." The testator died in 1881, leaving surviving him his widow and the two sons mentioned in the will, who executed a deed for the land. Afterwards, each of the sons died leaving a widow and a child, or children. It was held that the remainder vested in the sons on the death of testator and passed by the deed. In *Tindall* v. *Miller* (1896), 143 Ind. 337, 41 N. E. 535, this court construed the third item of a will reading as follows: "Third. I give and bequeath to my beloved wife, Sarah, the east half of my present dwelling house

and lot (describing the property) so long as she may live.  She shall have the exclusive use and profits of said property, with the appurtenances thereto belonging, and at the death of my said wife the above described property shall pass absolute to my daughter, Julia, if she still survive. ' If she shall be deceased, it is my desire that the property do pass to her heirs."    After the death of the testator the devisees conveyed the land by deed.    The daughter died before the mother.    In an action between those claiming under the deed and the heirs of the daughter, it was held that the remainder was not contingent nor conditional, but vested absolutely on testator's death and passed by the .deed.    To the same effect see *Harris* v. *Carpenter* (1887), 109 Ind. 540, 10 N. E. 422; and *Hoover* v. *Hoover* (1888), 116 Ind. 498, 19 N. E. 468.    In *Myers* v. *Carney, supra*, the will of Henry Carney was construed.    By the second item of the will a certain share was given to Elizabeth Myers, a daughter.    The fifth item provided that "If  *  *  *  either one of my living children shall die before the distribution of my estate as hereinbefore provided, his or her portion shall descend as provided by law where a person dies intestate."    Elizabeth Myers died after testator, but before the period of distribution.    It was contended that by reason of such fact the share given her by the will divested and descended to the heirs of testator.    It was held that the bequest vested in Elizabeth Myers on testator's death unconditionally and descended to her heirs.    Item three of the will of Moses Fowler devised the residue of his real estate to three devisees "subject to the following conditions, to wit:  (a) In the event of the death of any of my said children without lawful issue *living at the time of the death of such child*, then the share of such deceased child shall vest in, and become the absolute,

property in fee simple, in equal portions, of such of my said children as shall then be living, and the living descendants of such, if any, as may then be dead, the descendants of any deceased child taking, between them, the share which, if living, would have vested in their father or mother." In *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623, it was held that the said devisees took their respective shares in fee simple absolute on the death of the testator, and not subject to defeat by subsequent death without issue surviving. See, also, *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Clark* v. *Thieme* (1914), 181 Ind. 163, 103 N. E. 1068.

The cases cited discuss the rules of construction to which we have referred. These rules are not mere arbitrary formalities. They have been formulated to aid in the ascertainment of the testator's true intent and prevent its subversion by ascribing a meaning to a word, perhaps carelessly used, which conflicts with the general intent of the testator. *Aspey* v. *Lewis*, *supra*. They are the product of the wisdom and experience of the ages in seeking amid ambiguous phrases, the intent of those engaged in the serious and solemn business of making a final disposition of property by will. When the will here was made the testator knew that his son Francis might live as long as he actually did—44 years. He knew that of the children then born, and that might thereafter be born, no one might survive Francis, in which case nothing would pass by item three to testator's grandchildren or their descendants, if appellee's theory be corrrect. It is scarcely conceivable that the testator entertained such intent. It must be presumed that a rational, normal person in making such a will as this would have tender and just regard for dependent grandchildren who were manifestly objects of his bounty. *Aspey* v. *Lewis*,

*supra.* Testator knew that appellee or appellant's mother might die during the existence of the life tenancy, leaving dependent ones. Surely there is nothing in this will which shows the testator wanting in affection for his grandchildren. The fact that he created a life estate in Francis, with remainder to his young children, shows that testator looked into the future and sought to make provision for their possible day of need. On reading item three is it possible to conceive that testator intended that in the event that appellant's mother should marry and afterwards die with dependent children surviving, that the right of such children to inherit a portion of this land should depend on the mere chance whether the mother died a day before or a day after the death of Francis? *Myers* v. *Carney, supra,* 386. In *Rumsey* v. *Durham* (1854), 5 Ind. 71, this court construed a will which devised property to testator's widow during life, and provided that at her death it be sold and "equally divided among my children." At the testator's death he had eight children. At the widow's death, the time fixed for distribution, only three survived. One of those who died left a child. It was contended by the three surviving children of testator that they alone were entitled to participate in the distribution. This court held otherwise and said: "But it is contended that his children alive at the termination of the life estate, are alone entitled as distributees. If this construction be the true one, then the grandchild, not being within the description of children, would have no share in the division of the estate. This could not have been the design of the testator. It is but fair to presume that he intended to give something absolutely to the persons designated as legatees; that he did not intend to disinherit any of his children, or their descendants. No doubt his

mind would have revolted at the idea of his grand-children being left, perhaps at a tender age, without the means of subsistence. To us it is clear that the actual intention of the testator was, that the right to the distributive shares donated by the will should vest in his children immediately upon his decease." In *Fowler* v. *Duhme, supra,* 275, this court said: "In other words, since a devise of an estate, defeasible upon the happening of a contingency, may be so easily expressed, and since such estates stand in disfavor before the law, the intention to create such an estate must be denied unless such intention has been made certain by the language of the whole will."

On appellant's theory titles vested conditionally and divested on the death of each of the five children of the first taker who died before Francis, until finally only appellee was left. The practical effect of such theory is to constitute the deceased children of Francis mere conduits for the transmission of a fee simple title that could vest absolutely only on the condition that some child should survive the life tenant. For practical purposes the title might as well be in abeyance—a thing abhorred by the common law. Nothing in this will warrants the imputation to testator of an intent to make the fee simple title of this land a grand prize to the victor in his grandchildren's race with death. The mere definition of a single word or the position of a pronoun ought not alone to pursuade a court that a testator's purpose was devoid of reason, prudence and affection when making a final disposition of his property among his grandchildren. Appellee relies especially on *Corey* v. *Springer* (1894), 138 Ind. 506, 37 N. E. 322. Whether the doctrines declared in that case can be reconciled with those declared in the cases to which we have referred, we

need not determine here because the provisions of this will are so different from those found in he Springer will that it could not be justly held that the Springer case should control ' here even if the soundness of the opinion were unquestioned. See *Aldred* v. *Sylvester*, ante 542, where *Corey* v. *Springer* is overruled. We are of the opinion that on the death of Luke Walters the fee simple title to the land in question vested absolutely in appellee and appellant's mother, subject to diminution to let in after-born children, and consequently the court erred in concluding that appellee is the sole owner of the land. Judgment reversed with instructions to restate the conclusion of law and for further proceedings not in conflict with this opinion.

## ON PETITION FOR REHEARING.

MORRIS, C. J.—After the original opinion was delivered, appellee procured the service of additional counsel, and elaborate briefs, have been filed on petition for rehearing. The original contention that the children of Francis M. Walters took a determinable fee on testator's death, which determined as to those dying in the lifetime of Francis M., has been abandoned, and counsel now say that the estate is "not legally a conditional fee. It is a life estate given to the first taker and a remainder in fee to unascertained persons upon the happening of a contingency. It is not governed therefore by such cases as *Pate* v. *French* (1890), 122 Ind. 10, 23 N. E. 673; *Greer* v. *Wilson* (1886), 108 Ind. 322, 9 N. E. 284; *Moore* v. *Gary* (1897), 149 Ind. 51, 48 N. E. 630; *Cooper* v. *Hayes* (1884), 96 Ind. 386; *Pulse* v. *Osborn* (1903), 30 Ind. App. 631, 64 N. E. 59; *Campbell* v. *Bradford* (1906), 166 Ind. 451, 77 N. E. 849."

While this court is not bound to consider

9. questions presented, for the first time, on petition for rehearing, even if by an appellee,

it may do so to affirm a judgment. However, there is little or no practical difference between the original and present contentions here. Francis M. Walters had the enjoyment of the estate during his life, and, until his death a vested determinable fee in a child, liable to defeat on its death before that of the life tenant, was practically no more valuable to such child than a remainder whose vesting was contingent on its survival of the life tenant. *Knight* v. *Pottgieser* (1898), 176 Ill. 368, 52 N. E. 934. We, therefore, consider appellee's contention here, viz., that it was the purpose of testator to devise an estate only to such children of Francis as might be living at his death, and, in the event that such children might all be dead, then the land to descend to testator's heirs as intestate property.

Counsel for appellee overlook a presumption, or rule of construction, that this court has consistently recognized, viz., partial intestacy is to be avoided, unless the language of the will compels it. *Cate* v. *Cranor* (1868), 30 Ind. 292; *Lutz* v. *Lutz* (1827), 2 Blackf. 72; *Myers* v. *Carney* (1908), 171 Ind. 379, 384, 84 N. E. 400, and authorities cited. Unless the children of Francis M. took a fee simple absolute, vesting on testator's death, the will contemplated a possible intestacy as to the remainder in fee, for there was no devise thereof in case all the children died in Francis' lifetime. In the first item of the will the testator says, "as to such worldly estate as it has pleased God to intrust me with, I dispose of the same in the following manner." The second item devised described lands to his wife "in fee simple". His disposition of his other lands has been noted in the original opinion. Instead of this will compelling the inference that the testator contemplated a possible partial in-

testacy, Does it not fairly compel the opposite conclusion, when consideration is given to his language purporting to dispose, in the method set out, of the "estate" which he owned, or was intrusted with—the absolute fee simple? *Snodgrass* v. *Brandenburg* (1905), 164 Ind. 59, 71 N. E. 137, 72 N. E. 1030.

In *Bruce* v. *Bissell* (1889), 119 Ind. 525, 22 N. E. 4, 12 Am. St. 436, the testator devised a life estate in certain land to his widow, Nancy, followed by a devise of the same to his daughter, Rachel Johnson, for life, "provided she shall be living at the time of my death, and after her death to the child or children of her * * * who may survive her, in fee simple. But if she * * * should die before me and leave such child or children living at my death, then, in that event I bequeath said land to said child or children in fee simple. But should she * * * be living at the time of my death, and afterwards die leaving no such child or children, then I give and bequeath said tract of land to said Rachel for life. Remainder to my right heirs in fee." A like devise was made in other land to another daughter, Dovey Bruce. Following, was this provision: "It being my express intention that my said daughters shall respectively enjoy said tracts of land above described and bequeathed, during their respective natural lives, and after their * * * deaths to descend in fee simple respectively to the child or children of their bodies lawfully begotten that may survive them respectively and survive myself, and in default then to go to my right heirs in fee simple." Testator's widow and daughters survived him, but Rachel died nineteen days later, April 24, 1847, leaving an only son, Harrison L. Johnson, who died intestate in 1856, leaving John W. Johnson as his sole heir.

The latter died in 1872, leaving testator's widow as his next of kin. The widow conveyed the land to a third party. On the death of testator's widow, the children of Dovey Bruce, deceased, claimed the land as "right heirs" of testator. They contended that since the testator's widow outlived the daughter, Rachel, and all her lineal descendants, neither Rachel nor her son, Harrison L., ever took a vested interest in the land. In holding that Harrison L., took a remainder in fee simple, that vested on testator's death, it was said in relation to the appellant's contention; "The error which pervades the argument is fundamental, and lies in the assumption that because the enjoyment of the successive estates was postponed until the particular estate which preceded it should determine, therefore the successive estates created by the will did not vest in the respective devisees upon the death of the testator, but continued in abeyance until the happening of the events which were to determine the prior estate." The opinion delivered by Mitchell, J., discusses the rules of construction considered in the original opinion here, excepting that relating to partial intestacy, and furnishes ample authority for our holding here, even if this cause presented no question of partial intestacy. See, also, *Aldred* v. *Sylvester* (1915), *ante* 542, 111 N. E. 914.

Appellee's counsel in their briefs, overlook another rule of construction, generally, if not universally recognized, viz., where the testator's intention is obscured by conflicting expressions, it is to be sought in a rational purpose rather than an irrational one. *Jackson* v. *Hoover* (1866), 26 Ind. 511, 517; 3 Jarman, Wills, (5th ed.) 706. Such rule is applicable as well to statutes as to wills or other written instruments. *State* v. *Ensley* (1912), 177 Ind. 483, 492, 97 N. E.

113, Ann. Cas. 1914 D 1306.   Here, the testator, in language expressive of a present gift, devises this land to his grandchildren in fee simple, and did not intend to die intestate.    In the original opinion we referred to the irrational results that would follow the adoption of appellee's theory there presented, and the same is as applicable to the theory of a contingent fee as a determinable one.    It can not be doubted that at common law, words of survivorship were held to refer to the death of the testator and the gift vested absolutely in the beneficiaries then living. 3 Jarman, Wills (5th ed.) 579.   However, in *Cripps* v. *Walcott* (1819), 4 Madd. 12, a bequest of personalty was held to vest at the period of distribution. Later in *Doe* v. *Prigg* (1828), 8 B. & Cr. 231, the common-law rule was followed, in a devise of real estate, and it was said: "the testator's death is, in this case, so much the more rational period, so much the more likely to have been intended, and falling in, as it does, with the rule of law for vesting estates as soon as they may, instead of leaving them contingent, that we are of the opinion that the estate here vested in remainder immediately upon the testator's death, in the then children of Jennings and Warren."   This case was cited with approval in *Miller* v. *Keegan* (1860), 14 Ind. 502, 504; *Davidson* v. *Koehler* (1881), 76 Ind. 398.   Appellee cites a number of recent English cases that seem to depart from the common-law rule on this subject, and that recognized in *Doe* v. *Prigg, supra.*

Counsel suggest the adoption here of the rule recognized in recent English decisions, notwithstanding its conflict with that recognized by this court for decades.   See *Aldred* v. *Sylvester, supra.*   Had this court never before considered the question, we should feel constrained to examine the decisions

cited in the light of the respective statutes of wills,
of England, and Indiana. In adopting the common
law of England, we also adopted the statutes of the
British Parliament in aid thereof (with exceptions)
enacted previous to the settlement of Jamestown.
§236 Burns 1914, §236 R. S. 1881. The British
statutes of wills then in effect have been greatly
modified. 1 Vict., Chap. 26 (1837). However we
deem it unnecessary here to ascertain the differ-
ences between the existing statutes of wills of the
two sovereignties, for, were we convinced that the
Indiana rule is not so well grounded in logic as the
one for which appellee contends, we should feel
restrained here, by the doctrine of *stare decisis*,
from overruling the great number of our decisions
recognizing the rule of construction of ambiguous
devises to the effect that words of survivorship are
deemed to relate to the death of the testator, and
that words of postponement shall be deemed to re-
fer to the period of enjoyment of the estate rather
than to that of its vesting. *Aldred* v. *Sylvester,
supra.*

As early as 1854, in *Rumsey* v. *Durham* (1854), 5
Ind. 71, (where there were no words of present gift,
and where the gift to children was implied from a
directed distribution at the life tenant's death)
the rule of construction was recognized which deems
the estate vested at testator's death unless the in-
tent to postpone be "expressed". In *Wilson* v.
*Rudd* (1862), 19 Ind. 101, *Rumsey* v. *Durham, supra,*
was followed. In *Miller* v. *Keegan, supra,* decided
five years before Luke Walters' will was executed,
the common-law rule was recognized and this court
declared that in case of doubt as to time of vesting,
the earliest must be deemed the one intended. That
decision has since been cited with approval in
*Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E.

623, and many other cases, and where the rule there declared has been considered, it has been recognized as binding, unless possibly in *Corey* v. *Springer, supra,* now overruled. *Aldred* v. *Sylvester, supra.*

A rule so long and consistently followed must be deemed a rule of property. *Rocker* v. *Metzger* (1908), 171 Ind. 364, 86 N. E. 404. What we have said does not concede the superior wisdom or logic of the recent English authorities cited—at least when considered with reference to the spirit of our institutions or the purposes which usually dominate testators here in the disposition of real estate. Our law does give the testator the right, regardless of public or private inconveniences, to fetter the estate devised with gifts of determinable fees, executory devises and contingent remainders, but such restraints on free alienation are not favored and will never be implied from ambiguous language. Blackstone, in discussing the subject of estates tail (2 Blackstone, Comm. 116) says their establishment "occasioned infinite difficulties and disputes"; that children grew disobedient, knowing they could not be set aside; innocent purchasers were defrauded; and these estates were justly branded as mischiefs unknown to the common law and considered the common grievance of the realm. He further says that their establishment and continuance was due to the dominance of parliament by the nobility, who favored such estates. These estates were condemned by Lord Bacon and denounced by Lord Coke, as well as by later writers, because of their injurious effects on agriculture, commerce and industry. 4 Kent, Comm. 13. Here, where titles of nobility may not be granted, estates tail have been abolished or converted into ones in fee simple. §3994 Burns 1914, §2958 R. S. 1881. To a great

extent the evils denounced by Lord Coke attend such estates as appellee now contends for here. On such theory, during the forty-four years that the life tenant lived, the fee simple was vested in the testator's heirs, to divest in favor of such of the life tenant's children as might be living at his death. 4 Kent, Comm. 257. In the meantime the real estate was subject to injury by fire, flood and storm. It was subject to appropriation by liberal eminent domain laws, and for which the life tenant was only entitled to compensation for the injury to his life interest. The land was liable to assessment, up to its full value, for drains and other permanent public improvements, but the life tenant was chargeable only with the portion representing the benefit to the life estate. *Merrett* v. *Ritter* (1902), 158 Ind. 491, 63 N. E. 855; *Troy* v. *Protestant Episcopal Church* (1911), Ann. Cas. 1914B 817, note. The difficulty of equitably apportioning the cost of a public improvement of an estate, such as is contemplated by appellee's theory, is apparent. In this comparatively new country villages, cities and towns are laid out on short notice and grow rapidly, yet prudent persons would not invest in urban real estate affected by contingent remainders to beneficiaries unascertainable for decades. Should suburban lands adjoining a growing city become subject to such contingency its normal growth might be throttled for well nigh a century. Moreover, the intended beneficiaries of the testator suffer no less than the public. Even where the ulterior interest is a determinable fee vesting at testator's death, and which may be conveyed or mortgaged freely, it furnishes little security for credit and has little practical market value, and in time of financial depression is likely to fall into the hands of speculators with little recompense to the beneficiary of the devise. Because of

these and other reasons, testators rarely make devises such as is contemplated by appellee's theory here—a fact well recognized by courts and the legal profession. If the testator does intend such provision, he makes his will with the presumed knowledge that if he desires to postpone the vesting of the ulterior estate until the death of a described person, such intention may be clearly expressed`in a few words. The meaning of the word "vest" is well understood by lawyer and layman, and it is remarkable that in the vast majority of cases, presenting this question, that have been appealed to this court, the party contending for deferred vesting has based his claim on verbose or disconnected paragraphs, whereas the supposed intent might have been expressed in a single short sentence. *Fowler v. Duhme, supra.*

Where, therefore, a will is presented that is ambiguous, and the intention of the testator is clouded by apparently conflicting expressions, courts have resorted to rules of construction which had their origin in deductions from the observed uniformity of testator's intentions, and the expression thereof in writing their wills. From experience it was observed that testators, in the use of words of postponement usually had in mind only the actual time of enjoyment of the gift, and not its vesting; that deferred vesting often resulted in public inconvenience, and in injury to the beneficiary; that resort to postponed vesting was unusual except for special cause, and consequently, unless the intent to defer the vesting is clearly manifested, the testator must be deemed, in the use of words of postponement, to have referred only to the time of enjoyment. *McArthur v. Scott* (1885), 113 U. S. 340, 378, 5 Sup. Ct. 652, 28 L. Ed. 1015. The rule, in its origin, was in our opinion supported by sound reason, but if

not, its declaration and remaining in effect for so
long a time works no hardship on the testator who
writes his will in the light thereof. On the other
hand its overthrow now would result in thwarting
testator's real purposes because of the slightly in-
accurate use of some word of survivorship or post-
ponement.

Counsel for appellee cite *Coveny* v. *McLaughlin*
(1889), 148 Mass. 576, 20 N. E. 165, and a great
many Massachusetts cases which are claimed to sup-
port their contention here. It would unduly length-
en this opinion to set out the substance, even, of the
cases cited. Should it be concluded that Massa-
chusetts courts are not in full accord with the rules
so long recognized here, we would doubt the pro-
priety, at this late date, of modifying them mate-
rially. However, we call attention to two recent de-
cisions of that tribunal which is justly held in the
highest esteem by all courts. In *Whitman* v.
*Huefner* (1915), 221 Mass. 265, 108 N. E. 1054,
the testator devised his estate to trustees in trust,
to pay the income thereof, and, if necessary, por-
tions of the principal, to his widow, during life.
This provision followed: "and upon her decease
to pay over * * * to my children and the is-
sue of any deceased child to take by right of repre-
sentation the share the parent would have taken, if
living, to have and to hold the same to them and
their heirs." The widow and three children sur-
vived testator. One child died intestate without
issue in the widow's lifetime, leaving his wife sur-
viving. Another child, Alice, married and had a
child, but died in the testator's widow's lifetime,
leaving a husband and the child, surviving. This
child died, at the age of four years, in 1905. Tes-
tator's widow died in 1914. The remaining one of
testator's children survived his widow. In holding

that the estate vested in the children at testator's death, the court said: "The principle question relates to the disposition of the remainder of the trust fund under the will of William C. Haskins; that is, whether it vested at the death of the testator in his three children then living, or was contingent until the death of the testator's widow and thereupon vested in his only child and issue then living. The intention of the testator not being clearly manifested by the language of the clause in controversy, we must resort for aid to the established rules of construction that long have been applied to similar clauses in like cases. One that is well settled is that no remainder will be construed to be contingent which may, consistently with the intention of the testator, be deemed vested. *Bosworth* v. *Stockbridge* (1905), 189 Mass. 266, 75 N. E. 712, and cases cited. And where, as in this case, the remainder is to children or other descendants of the testator, that circumstance tends to indicate that vested, rather than contingent, remainders were intended to be created." In *Blume* v. *Kimball* (1916), 222 Mass. 412, 110 N. E. 1036, the will devised the estate to trustees to manage and pay the income thereof to testator's children until the death of his last surviving child "after which my said real estate shall be divided among my legal heirs according to the rules of law." After the death of all the children the question was presented as to the time of vesting, and it was held that the gift vested on testator's death. The court quoted from a former opinion as follows: "The general rule is familiar, that in cases of doubt in the construction of wills the law favors the creation of vested rather than contingent estates. Speaking more specifically, in the language of Mr. Justice Gray in *McArthur* v. *Scott*, *supra*, 'It has long been a settled rule of construc-

tion in the courts of England and America that estates, legal or equitable, given by will, should always be regarded as vesting immediately, unless the testator has by very clear words manifested an intention that they should be contingent upon a future event.' This is the law of Massachusetts, controlling the later as well as the earlier decisions." Nothing contained in this opinion should lead to the inference that any rule of construction is properly employed to overcome the testator's intention manifested by a consideration of the will as a whole. It is only in doubtful cases that these rules apply. It may, of course, happen that occasionally these rules will be improperly applied to wills that in fact present no ambiguity. Against such error courts should keep careful guard, but in the final analysis it must be remembered that enlightened human reason is the final arbiter as to the proper application of these, as well as other rules of law, for neither statute nor judicial declaration can control the operation of the human mind. 3 Chamberlayne, Mod. Law of Ev. §§1733a, 1801; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592, 613, 614, 100 N. E. 675, 102 N. E. 99.

This will shows, as we view it, that the testator did not contemplate partial intestacy; that the words "I give * * * to his children" the land in controversy, indicated the testator's intention to vest the estate in the children when the will took effect, and not at the life tenant's death; that the use of the words "fee simple", following the same language concededly used in devising a fee simple absolute, denotes the devise of an absolute, rather than a contingent fee. Against this is the phrase "surviving him" on which appellee bases his claim. Aside from any question of words of survivorship involving a double meaning—postponement of en-

joyment or vesting of the estate—we are satisfied that sufficient ambiguity appears to properly invoke the application of rules of construction. Petition for rehearing overruled.

NOTE.—Reported in 106 N. E. 879; 111 N. E. 921. As to the rules of construction of testamentary writings, see 89 Am. St. 488. As to the time to which words of survivorship refer in a devise or bequest of a remainder after a life estate, see 14 Ann. Cas. 706. See, also, under (2) 40 Cyc 1475, 1477; (3) 40 Cyc 1449; (4) 16 Cyc 601; (5) 40 Cyc 1413; (6) 40 Cyc 1666, 1667; (7) 40 Cyc 1409; (8) 40 Cyc 1667, 1674; (9) 4 C. J. 642; 3 Cyc 219; (10) 40 Cyc 1411.