

**ATTORNEY FOR APPELLANTS**

David P. Murphy
Greenfield, Indiana

**ATTORNEYS FOR APPELLEES**

Calvert S. Miller
Kimberly Martin
Carson LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jayne Murphy, Stephen Kelker, and Cristine Pisula,

*Appellants-Intervenors,*

v.

Trustee of Star Financial Bank, Laura Lynne Bradford, Amy Myers, Abbie Fellrath, Courtney Ulrey, Eric Franke, Anne Marie Cochrane, Jason Franke, Lisa Kay Osburn Harkless, Heather Alwine Eracleous, Trent Talbott, Chris Anderson, Bradley Anderson, and Matthew Anderson,

*Appellees-Intervenors.*

January 13, 2020

Court of Appeals Case No.
19A-TR-1529

Appeal from the Allen Superior
Court

The Honorable Jennifer L.
DeGroote, Judge

Trial Court Cause No.
02D03-1809-TR-18

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Intervenors, Jayne Murphy, Stephen Kelker, and Christine Pistula (collectively, Kelker Children), appeal the trial court's summary judgment, determining that there was no genuine issue of material fact precluding judgment in favor of Appellees-Intervenors, Laura Lynne Bradford, Amy Myers, Abbie Fellrath, Courtney Ulrey, Eric Franke, Anne Marie Cochrane, Jason Franke, Lisa Osburn, Alwine Harkless, Heather Alwine Eracieous, Trent Talbott, Chris Anderson, Bradley Anderson, and Matthew Anderson (collectively, Franke Grandchildren), regarding the interpretation of the Living Trust Agreement.

We affirm.

# ISSUE

The Kelker Children present one issue on appeal, which we restate as: Whether a genuine issue of material fact exists with respect to the language of the Distribution Provision in the Living Trust Agreement.

# FACTS AND PROCEDURAL HISTORY

On November 7, 1990, Janice Dray (Janice) executed a Living Trust Agreement, creating the revocable Janice A. Dray Living Trust (Trust) and naming herself as Trustee. Pursuant to the terms of the Living Trust Agreement, the income derived from the Trust was to be distributed to Janice's sister-in-law, Jacqueline Pearl Dray (Jacqueline), in a life estate, provided Jacqueline survived Janice and Janice's husband, Virgil Dray (Virgil). Upon

Jacqueline's death, the Trust property was to be converted to cash and distributed in equal shares to Janice's sister, Alma Franke (Alma), and brother, Ralph Kelker (Ralph). Specifically, the Distribution Provision of the Living Trust Agreement provided:

> At the death of [Jacqueline], the remaining assets are to be converted to cash and distributed in equal shares, share and share alike, to [Ralph], brother of [Janice], and [Alma], sister of [Janice], and if either said [Ralph] or [Alma] is not then living, to their surviving children, per stirpes.

(Appellant's App. Vol. II, p. 148). The Living Trust Agreement does not include a residuary beneficiary provision other than the Distribution Provision. When the Living Trust Agreement was executed, Ralph had five children and Alma had six children, of which five were surviving, in addition to many grandchildren in both families.

[5] In 1993, three years after the creation of the Trust, attorney Thomas Locke (Attorney Locke), discussed estate planning with Janice and drafted a power of attorney, living will declaration, and a last will and testament (collectively, Alternative Estate Documents). This last will and testament included the following provision regarding the distribution of the estate's residue:

> I give and bequeath all my residuary estate . . . in equal shares, share and share alike, to my brother [Ralph], and my sister [Alma]. If either of them should predecease me, then their interest goes to their surviving children, per stirpes.

(Appellant's App. Vol. II, p. 77). By accompanying letter dated February 22, 1993, Attorney Locke explained that this provision had been drafted to express Janice's intent that, upon Janice's death, "all of the remaining assets in [Janice's] estate go to Ralph and Alma in equal shares. If either of them predecease [Janice], [Janice] wanted their share to go to their children." (Appellant's App. Vol. II, p. 75). In addition, pursuant to the Alternative Estate Documents, the Trust would terminate and the assets distributed upon Janice's death, instead of creating a life estate for Jacqueline. Janice did not execute the Alternative Estate Documents.

[6] Virgil passed away on January 22, 1993 and Janice died on March 25, 1997, effectuating the life estate for Jacqueline. By the time Jacqueline passed away in June 2018, almost twenty-eight years after the creation of the Trust, she had outlived Ralph and Alma, two of Ralph's daughters, and all of Alma's children. Jacqueline was survived by three of Ralph's children (the Kelker Children), and three of Ralph's grandchildren, the children of Ralph's children who predeceased Jacqueline, as well as by Alma's thirteen grandchildren (the Franke Grandchildren).

[7] On September 19, 2018, Star Financial Bank, as successor trustee, filed a petition to docket the Trust and determine heirship. The Kelker Children and the Franke Grandchildren appeared as separate Intervenors in the proceedings. On March 19, 2019, the Kelker Children filed their motion for summary judgment, memorandum in support thereof, and designated evidence. In their motion, they advanced an interpretation of the Distribution Provision of the

Living Trust Agreement which would result in a distribution of the Trust corpus to them, to the exclusion of the Franke Grandchildren and Ralph's grandchildren whose parents predeceased Jacqueline. According to the Kelker Children, the phrase "surviving children," as used in the Distribution Provision, placed two conditions on the distribution of the corpus: (1) the qualified recipient must be a child of Ralph or Alma, not a further descendant; and (2) the recipient must be alive on the date of Jacqueline's passing. That same day, the Franke Grandchildren filed their motion for summary judgment, memorandum of law, and designation of evidence claiming that the use of "per stirpes" language in the Distribution Provision at the second-generation level reinforced the idea that each of the Kelker and Franke families should receive one-half of the Trust property. They contended that reading the Distribution Provision as a whole suggests an intent on the part of Janice to create two equal gifts to the families of her two siblings due to the use of "equal shares" language, with a "per stirpes" division at the second-generation level.

[8] On May 15, 2019, the trial court heard oral argument on the parties' respective motions for summary judgment. Thereafter, on June 13, 2019, the trial court entered its summary judgment in favor of the Franke Grandchildren. Upon a close reading of the Distribution Provision, the trial court declared the language to be ambiguous as "surviving" generally connotes a conditional gift requiring the beneficiary to be alive on the date of distribution, whereas "per stirpes" indicates a distribution among branches of a family tree with a right of representation that allows descendants of a predeceased beneficiary to take the

beneficiary's interest. To resolve the ambiguity, the trial court considered external, designated evidence of the unique family histories of Ralph and Alma, known to Janice at the time of the creation of the Trust, and determined that there is no genuine issue of material fact that Janice intended to create equal, unconditional, vested gifts of the remainder of the Trust corpus to the families of her two siblings.

The Kelker Children now appeal. Additional evidence will be provided if necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

In reviewing a trial court's ruling on summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *First Farmers Bank & Trust Co. v. Whorley*, 891 N.E.2d 604, 607 (Ind. Ct. App. 2008), *trans. denied*. Thus, on appeal, we must determine whether there is a genuine issue of material fact and whether the trial court has correctly applied the law. *Id*. at 607-08. In doing so, we consider all of the designated evidence in the light most favorable to the non-moving party. *Id*. at 608. A fact is 'material' for summary judgment purposes if it helps to prove or disprove an essential element of the plaintiff's cause of action; a factual issue is 'genuine' if the trier of fact is required to resolve an opposing party's different version of the underlying facts. *Ind. Farmers Mut. Ins. Group v. Blaskie*, 727 N.E.2d 13, 15 (Ind. 2000). The party appealing the grant

of summary judgment has the burden of persuading this court that the trial court's ruling was improper. *First Farmers Bank & Trust Co.*, 891 N.E.2d at 607.

[11] We observe that, in the present case, the trial court entered findings of fact and conclusions of law thereon in support of its judgment. Generally, special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer a court valuable insight into the trial court's rationale and facilitate appellate review. *Id*

## II. *Analysis*

### A. *Ambiguity*

[12] The Kelker Children contend that the trial court erred in issuing summary judgment for the Franke Grandchildren. Focusing on the language of the Distribution Provision, they maintain that the "surviving" language predominates over "per stirpes" and therefore, the first beneficiaries are Ralph and Alma as they both were alive on the date of the creation of the Trust; whereas, the second class beneficiaries connotes the children of Ralph and Alma who survived Ralph, Alma, and Jacqueline. As such, the Kelker Children maintain that all of the Trust corpus that should have been distributed to Alma's children and Ralph's predeceased children now passes to the surviving Kelker Children because the survival of Alma's and Ralph's children was a condition precedent of receiving their parent's share.

[13]    The interpretation of a will or trust is a question of law for the court. *University of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 531 (Ind. 2006). The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention. *Id.* at 532. Indiana follows "the four corners rule" that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Id.* Accordingly, where a trust is capable of clear and unambiguous construction, under this doctrine, the court must give effect to the trust's clear meaning without resort to extrinsic evidence. *Id.* A document is not ambiguous merely because parties disagree about a term's meaning. *Kelly v. Estate of Johnson*, 788 N.E.2d 933, 935 (Ind. Ct. App. 2003), *trans. denied*. Rather, language is ambiguous only if reasonable people could come to different conclusions as to its meaning. *Id.*

[14]    The opening clause of the Distribution Provision reads that, upon Jacqueline's death, the Trust estate is to be converted to cash and "distributed in equal shares, share and share alike" to Ralph and Alma. (Appellant's App. Vol. II, p. 3). "Generally, when a gift is to a group of individuals sharing the same relationship to the settlor, the use of the words 'share and share alike' denotes a per capita distribution, rather than a per stirpes distribution." *Trust Agreement of Westervelt v. First Interstate Bank of N. Ind.*, 551 N.E.2d 1180, 1184 (Ind. Ct. App. 1990), *reh'g denied, trans. denied*. "Per capita is defined as denoting that 'an equal share is given to each of a number of persons, all of whom stand in equal degree to the decedent, without reference to their stocks or the right of

representation.'" *Id.* (citing BLACK'S LAW DICTIONARY 1292 (Rev. 4th ed. 1968)). In *Laisure v. Richards*, 103 N.E. 679, 683 (Ind. Ct. App. 1913), this court explained: "The foundation of the per capita rule of distribution rests in a large measure on the presumption that when the beneficiaries are in equal degrees of relationship to the testator his affection of each is equal, and therefore he will desire to benefit each equally." Here, Alma and Ralph stand in the same relationship to Janice. As such, it appears Alma and Ralph take equal shares of the trust corpus upon cessation of Jacqueline's life estate.

[15] The subsequent clause of the Distribution Provision identified the alternative recipients in the event Ralph and Alma predeceased Jacqueline: "and if either said [Ralph] or [Alma] is not then living, to their surviving children, per stirpes." (Appellants' App. Vol. II, p. 148). "Per stirpes means literally by roots or stocks; by representation. It denotes that method of dividing an intestate estate where a class or group of distributees take the share which their ancestor would have been entitled to, taking it by their right of representing such ancestor, and not as so many individuals, or as the expression is used, per capita." *Matter of Estate of Walters*, 519 N.E.2d 1270, 1272 (Ind. Ct. App. 1988), *trans. denied*. In a per stirpes distribution, the size of a beneficiary's estate depends on how many other beneficiaries are direct descendants of the ancestor. *Matter of Fitton*, 605 N.E.2d 1164, 1169 (Ind. Ct. App. 1992). Thus, under a per stirpes distribution, there can be no condition of survival affecting the vesting of an interest because one's descendants will represent the predeceased ancestor and take the ancestor's place and share.

[16]     If the right of representation inherent in the per stirpes distribution is ignored, and "surviving" is treated as creating contingent remainders, the Distribution Provision may be construed as suggested by the Kelker Children by creating vested interests only in the three Kelker Children who survived Jacqueline. If, on the other hand, "surviving" is interpreted as describing the timing of the enjoyment of the interests, rather than as a condition of the gift, the Distribution Provision may be interpreted as establishing vested interests in the Kelker Children and Franke children, which may be inherited by their grandchildren whose parents predeceased Jacqueline through the process of representation inherent in the per stirpes distribution. Accordingly, with both interpretations being equally logical and reasonable, there is an apparent ambiguity between the "surviving" condition and the "per stirpes" term of the Distribution Provision and we need to look to extrinsic evidence to construe the Trust instrument.

[17]     Nonetheless, the Kelker Children argue that the Living Trust Agreement is unambiguous as it created contingent remainder interests in the Trust property. They note that there is no ambiguity in the Distribution Provision related to the use of the terms "in equal shares, share and share alike" and "per stirpes" as these terms describe two different distribution schemes applicable to separate classes of beneficiaries. We agree with this contention; however, the Kelker Children misunderstand the cause of the ambiguity. There is no conflict between the per capita and per stirpes distributions at the first- and second-generation levels of beneficiaries respectively. Rather, we conclude that the

Distribution Provision is ambiguous because the terms surviving and per stirpes, both used within the same second-generation class of beneficiaries, are irreconcilable. If Alma and Ralph's children must survive Jacqueline to advance an interest in the Trust, there can be no per stirpes distribution because the condition of survival negates the right of representation inherent in a per stirpes distribution.[1]

## B. *Extrinsic Evidence*

---

[1] In support of their argument that the Distribution Provision of the Living Trust Agreement is unambiguous, the Kelker Children rely on *Citizens' Loan & Trust Co. v. Herron*, 115 N.E. 941 (Ind. 1917), a decision which addressed the vesting of certain interests in trust instruments. In *Citizens' Loan*, father created a testamentary trust for the benefit of his six children. *Id*. at 941-42. The trust stipulated that the corpus would not be distributed to the beneficiaries until the mother died and the youngest child attained the age of twenty-one. *Id*. The instrument further provided that "if any one or more of my said children shall die before said final distribution, then and in that event if the children or child so dying shall leave surviving him or her a child or children, issue of his or her body, such child or children to take and inherit the share or portion that would go to the parent if living under the provisions of this will." *Id*. One of father's children died prior to the time of distribution, leaving two children and several debts. *Id*. at 942. The child's creditors claimed that the interest in the trust vested prior to his death and that they were entitled to take the child's share of the trust property to satisfy his debts. *Id*. Our supreme court rejected the argument, finding that the interest was not vested, but was contingent upon the child surviving his mother and youngest brother's twenty-first birthday. *Id*. at 943. In reaching this conclusion, the court declared the terms of the will to be unambiguous as the will included a detailed explanation of the interests created, the time of distribution of the trust property, and alternative beneficiaries. *Id*. at 942. Although there exist factual similarities between *Citizens' Loan* and the case at bar, we find *Citizens' Loan* to be inapplicable. Unlike the will in *Citizens' Loan*, it is not evident from the terms of the Distribution Provision that Alma's children's interests were contingent upon them surviving Jacqueline. Instead, the Distribution Provision identifies primary and alternative beneficiaries, and the time of distribution in one sentence, as well as employing two fundamentally inconsistent terms to express the settlor's intent.

While the Kelker Children rely on several additional cases purportedly supporting their position, we caution that "[w]hile precedents are valuable aids to courts in the interpretation of trust instruments, they are very rarely conclusive, for in the analysis the meaning of every trust must be determined upon considerations pertaining to its own peculiar facts." *See Hackleman v. Hackleman*, 146 N.E.590, 592 (Ind. Ct. App. 1925). "[T]he reasoning of the cases is often very refined and subtle, and involves a consideration of minute differences of language; and the final determination of each case must after all, depend upon the intention, to be gathered from all of the language used by the particular testator, whose will is before the court." *Laisure*, 103 N.E. at 682

[18] Indiana has long recognized that extrinsic evidence of the facts and circumstances known to the settlor and existing at the time of execution may be considered by a court when construing an instrument. *See Dougherty v. Rogers*, 20 N.E. 779, 781 (Ind. 1889). The rationale for admission of this evidence is that it is not offered for the purpose of contradicting the meaning of a written instrument, but is offered to "connect the instrument with the extrinsic facts therein referred to, and to place the court, as nearly as may be, in the situation occupied by the testator, so that his intention may be determined from the language of the instrument, as it is explained by the extrinsic facts and circumstances." *Id*. In construing the Trust instrument, we are mindful that "the law favors the vesting of estates, and looks with disfavor on the postponement of the vesting of title, nevertheless contingent remainders are lawful, and, if a testator by unambiguous language creates a contingent remainder, it is the duty of the court to uphold it." *Hackleman v. Hackleman,* 146 N.E.2d 590, 591 (Ind. Ct. App. 1925).

[19] In *Alsman v. Walters*, 106 N.E. 879 (Ind. 1914),[2] our supreme court construed: "I give and bequeath to my son, Francis M. Walters, during his natural life and after his death to his children surviving him in fee simple the following tract of

---

[2] Pointing to *Citizens' Loan*, the Kelker Children incorrectly assert that our supreme court has "specifically disapproved the application of [*Alsman*] to Trust distribution cases." (Appellants' Br. p. 32). In *Citizens' Loan*, the court merely distinguished *Alsman* and related cases based on the facts, noting that the holding of *Alsman* and related cases did not apply because, unlike in *Citizens' Loan*, *Alsman* created an interceding life estate, after which the fee simple was given to certain designated persons, the enjoyment of which was postponed until the happening of certain events. *Citizens' Loan*, 115 N.E. at 942.

land[.]" *Id*. at 880. Francis had six children of which only four survived. *Id*. One of Francis' daughters had a son, Hosea, who survived his mother and grandfather. *Id*. Francis' four surviving children argued that Hosea was not entitled to his mother's share of the estate because the instrument had created contingent remainders, which were conditioned upon the beneficiary being a child of Francis and being alive at the time of Francis' death. *Id*. The court rejected this proffered interpretation, finding that the combination of the terms "surviving" and "fee simple" created an ambiguity. *Id*. at 881. To construe the will in light of the stated ambiguity, the court turned to "established rules for the construction of ambiguous devises," including a preference for early vesting of interests and against contingencies; "partial intestacy will be avoided if possible." *Id*. Based on those rules, the court rejected the children's claim, and interpreted the will as creating vested remainders in each of Francis' children. *Id*. at 882. As a vested interest, Hosea could inherit his mother's share after her death. *Id*. Our supreme court explained that the rules of construction "are not mere arbitrary formalities" but have been "formulated to aid in the ascertainment of the testator's true intent and prevent its subversion by ascribing a meaning to a word, perhaps carelessly used, which conflicts with the general intent of the testator." *Id*. at 881. The court suggested that the word "surviving" had been imprudently included in the devise as

> [n]othing in this will warrants the imputation to testator of an intent to make the fee-simple title of this land a grand prize to the victor in his grandchildren's race with death. The mere definition of a single word or the position of a pronoun ought not alone to persuade a court that a testator's purpose was devoid of

> reason, prudence, and affection when making a final disposition of his property among his grandchildren.

*Id*. at 882.

[20] Mindful of our preference for the early vesting of estates, the trial court, in its summary judgment, reflected that the structure of the Distribution Provision, instituting a per capita distribution at the first-generation level and a per stirpes distribution at the second-generation level, indicated Janice's intent to give equal gifts to the families of both her siblings. The trial court understood that a per stirpes distribution at the second-generation level, instead of per capita, was necessary to effectuate this intent as Ralph and Alma did not have an equal number of children during their lifetimes. Considering that one of Alma's children died in infancy, a fact known by Janice, the trial court suggested an explanation for the use of the term "surviving" as referring to Alma's five children who were alive when the Living Trust Agreement was created in 1990.

[21] Moreover, the designated evidence includes that three years after the creation of the Living Trust Agreement, Janice contacted Attorney Locke with a perceived intention to amend her estate provisions. Attorney Locke drafted Alternative Estate Documents in which the interceding life estate for Jacqueline was cancelled, with all other provisions remaining the same. By accompanying letter, Attorney Locke explained to Janice that, upon her death, "all of the remaining assets in [Janice's] estate go to Ralph and Alma in equal shares. If either of them predecease [Janice], [Janice] wanted their share to go to their children." (Appellant's App. Vol. II, p. 75). Even though Janice never

executed these Alternative Estate Documents, it can be reasonably inferred that Janice was aware of the division of her estate equally benefitting the families of both her siblings. "It must be presumed that a rational, normal person in making such a will as this would have tender and just regard for [] grandchildren who were manifestly objects of [her] bounty." *Alsman*, 106 N.E. at 882.

Accordingly, here, after determining that the Living Trust Agreement was ambiguous due to the juxtaposition of two conflicting concepts by the settlor of the Trust, the trial court employed the rules of construction set forth in *Alsman*, including a preference for the early vesting of interests, in construing the Distribution Clause. Consistent with the extrinsic designated evidence of Janice's intent, the trial court concluded that the term "surviving" was mere surplusage and had been carelessly used. Accordingly, as we find that the trial court properly applied the law and, upon review of all the designated evidence before us, we agree with the trial court that no genuine issue of material fact exists that Janice intended a per capita division of the Trust corpus between her siblings, with a per stirpes division among the descendants of Alma and Ralph. Therefore, the Franke Grandchildren are entitled to judgment as a matter of law.

## CONCLUSION

Based on the foregoing, we hold that no genuine issue of material fact exists with respect to the Distribution Provision of the Living Trust Agreement, which establishes a per capita division of the Trust corpus between the families of

Ralph and Alma and a per stirpes division between the children of Ralph and Alma.

[24]    Affirmed.

[25]    Baker, J. and Brown, J. concur