No. 16,197.

## BORGNER v. BROWN ET AL.

WILL.—*Construction of.*—*Lapsing Legacy.*—*Provision Against.*—*How Construed.*—*Meaning of the Word "Descend."*—A. devises to B., his wife, a life estate in certain real estate, and devises the remainder after her death to C., his son, and if C. should die without issue, then one-third of said real estate to "descend" to his (C.'s) wife, if living, and the remainder to go to A.'s children.

*Held*, that if C. should survive A., he (C.) would take absolutely the remainder limited on the life estate, and in the event of C.'s death before A., C.'s wife would take one-third of said land, and the remaining two-thirds would go to A.'s children.

*Held*, also, that the provision of the will, disposing of the real estate in case of C.'s death, had reference to the death of C. before the death of the testator.

*Held*, also, that the word "descend," as used in the will, must be construed in the sense of *to go*, so as not to defeat the evident intention of the testator, such sense being the common and ordinary one.

*Held*, also, that upon the death of C.'s widow, she having married again, her husband held an interest in the land so obtained by her.

SAME.—*A Provision Against a Legacy Lapsing.*—A testator may provide against the lapsing of a legacy by designating to whom the legacy shall go in case of the death of the first legatee.

SAME.—*Construction of.*—*Presumption.*—In construing a will, the legal presumption against a total or a partial intestacy must be adhered to.

QUIETING TITLE.—*Judgment.*—*Incorrect in its Terms.*—*Incompleteness of.*—*Reversal of.*—Where an action was brought to quiet title to certain real estate, and all the defendants joined in a general denial, and all except one in an answer by way of cross-complaint alleging title to one-third of said land, and asking for a partition, and the trial court found against the plaintiff on the complaint, and in favor of the cross-complainants on the cross-complaint, and the court rendered judgment setting off to the cross-complainants the full one-third part in value of said lands, it appearing that the defendant who did not join in the cross-complaint has an interest in said land, and the judgment not having the effect to quiet the title to the other two-thirds, as prayed for, and which right was not disputed, the judgment on appeal should be reversed.

*T. J. Kane* and *T. P. Davis*, for appellant.

*R. Graham, R. N. Lamb* and *R. Hill*, for appellees.

HACKNEY, J.—This was an action by the appellant against the appellees, to quiet the title to a tract of land in Hamilton county, consisting of one hundred and thirty-one acres. The complaint alleges an unfounded adverse claim by the appellees, constituting a cloud upon the title. The title asserted by the appellant, in her complaint, involves the construction of the following testamentary provision in the will of Isaac Helms: "I give and devise to my beloved wife, in lieu of her interest in my lands, the farm on which we now reside (describing it), during her natural life. * * * At the death of my said wife, the real estate aforesaid I give and devise to my son James Helms and his heirs. If my said son should die without issue, then the above-named real estate one-third to descend to his wife, if living, and the remainder to go to my children."

The complaint further alleges the death of Isaac Helms, and the admission to probate of his will, in the year 1864; that said James Helms died before the death of the testator, leaving surviving him, Sarah A. Helms, his widow, without issue; that said Sarah A. Helms thereafter intermarried with the appellee, Orin H. Brown, and subsequently, in 1885, died, leaving said Orin, and the other appellees, the issue of said marriage with said Orin H. Brown; that the widow of said Isaac Helms did not depart this life until in 1890, and that "the children, heirs and devisees of said Isaac Helms sold and conveyed said real estate to the plaintiff."

To this complaint the appellees answered, first, jointly, the general denial, and secondly, as follows:

"*Secondly.* The defendants, Myron C. Brown, Georgia E. Brown, Mary A. Brown and Simeon Sharp Brown, for a further answer to the complaint herein, and for a cross-complaint against the plaintiff, say that they are the owners

jointly of the undivided one-third of the lands in the complaint mentioned and described, and they ask that, on the final hearing of this cause, partition be awarded them, and their said interest be set off to them jointly."

Upon the trial the court found for the appellees, and, except Orin H. Brown, decreed that partition be made, setting off to them the one-third part in value of said lands. The appellant, by her several motions for a new trial, in arrest of judgment, and to modify the judgment, has reserved these questions:

*First.* Did Sarah A. Brown, widow of James Helms, take the one-third interest in said lands, under the provision of the will of Isaac Helms, above quoted?

*Second.* If said Sarah received such interest in said lands, is her second husband, Orin H. Brown, as her widower, entitled to share therein?

*Third.* Is the cross-complaint sufficient, as a pleading, to support the decree rendered by the lower court?

We will pass upon these questions in the order in which they are here stated.

The appellant insists that the devise was to James upon the condition that he should survive his mother; that no estate passed to Sarah A., absolutely or conditionally; that by reason of the death of James in the lifetime of the testator, the devise to him lapsed, and no estate, absolute or conditional, ever vested in James, which, under the word *descend*, as used in the will, could pass to said Sarah A. as the widow of James.

We repeat the language of the will, so far as it is necessary to the questions in review: "I devise to my wife the farm during her natural life; at the death of my wife, the real estate aforesaid I devise to my son James. If James should die without issue, the above real estate to descend to his wife, if living, and the remainder to go to my children."

It is conceded that this clause of the will gave to the

widow of the testator Isaac a life estate in the whole tract.    No contingency is expressed or implied giving her a greater or less interest.

There is nothing in the language of the clause from which we can find that the testator intended to postpone or suspend the vesting of the fee; and, as held by this court in a number of cases, the law favors the vesting of estates, and will construe the terms of a will as creating a vested estate, if possible.    *Heilman* v. *Heilman*, 129 Ind. 59; *Harris* v. *Carpenter*, 109 Ind. 540; and in *Amos* v. *Amos*, 117 Ind. 37, it is said:

"We affirm, as an established principle, that the law not only favors the vesting of remainders, but it also presumes that words postponing the estate relate to the beginning of the enjoyment of the remainder and not to the vesting of that estate.    *Davidson* v. *Koehler*, 76 Ind. 398; *Davidson* v. *Bates*, 111 Ind. 391; *Davidson* v. *Hutchins*, 112 Ind. 322." See, also, *Hoover* v. *Hoover*, 116 Ind. 498; *Bruce* v. *Bissell*, 119 Ind. 525, and *Wright* v. *Charley*, 129 Ind. 257.

In the case of *Hielman* v. *Hielman*, *supra*, the following is quoted with approval, from *Bruce* v. *Bissell*, *supra:*

"It is familiar law that, in the absence of a clear manifestation of the intention of the testator to the contrary, estates shall be held to vest at the earliest possible period. The intent to postpone the vesting of the estate must be clear and manifest, and must not arise by mere inference or construction."

To the same effect is *Miller* v. *Keegan*, 14 Ind. 502.

The expression of the clause, "die without issue," does not express a contingency to arise after the death of the testator.    In *Wright* v. *Charley*, *supra*, is found this statement of the rule:

"In accord with this rule, it is said by Mr. Jarman to be an established rule that where a bequest is simply to one person, and, in case of his death, to another, the primary devisee, surviving the testator, takes absolutely.    This rule

applies to both personal and real estate, and the authorities in this country uniformly sustain the construction that, in a devise or bequest *simpliciter* to one person, and, in case of his death, to another, the words refer to a death in the lifetime of the testator. 2 Jarman on Wills, 752. This rule is fully sustained by the authorities. *Moore* v. *Lyons*, 25 Wend. 119; *Kelly* v. *Kelly*, 61 N. Y. 47; *Briggs* v. *Shaw*, 9 Allen, 516; *Whitney* v. *Whitney*, 45 N. H. 311; *Vanderzee* v. *Slingerland*, 103 N. Y. Apps., 47, S. C. 8 N. E. Rep. 247; *Reams* v. *Spann*, 26 S. C. 561; *Wills* v. *Wills*, 3 S. W. Rep. 900; *Hoover* v. *Hoover, supra*; *Harris* v. *Carpenter, supra.*"

A devise to A. in the first instance, with a provision over, in case of his death, was held to mean the death of A. before the death of the testator. *Stevenson* v. *Fox*, 125 Pa. St. 568, S. C. 11 Am. St. Rep. 922, and note.

We are led to the conclusion that James Helms, if he had survived the testator, would have taken the fee in said lands immediately upon the death of the testator. It is urged that his death before that of the testator caused the devise to lapse; and, so far as it relates to James, we concur. *Maxwell* v. *Featherston*, 83 Ind. 339; *West* v. *West*, 89 Ind. 529; 2 Redfield on Wills, p. 159, section 8; 1 Jarman on Wills, 5 Am. ed., p. 617, and Beach on Wills, p. 302, section 161.

But most of these authorities, and many others, hold that where the testator clearly provides for the disposition of the property, when the devise shall have lapsed as to the primary devisee, such provision will be upheld. It is said in Beach on Wills, p. 302, section 161, that "this rule, however, being founded upon the supposed intention of the testator, that only those persons who may be living at the time of his death shall receive the gifts bequeathed them by the will, may, of course, be controlled by expressions manifesting a contrary intention, as by a direct provision that a legacy shall not lapse, or by a distinct

provision of a substitute in the event of the first benefi-
ciary dying before his decease." In Jarman on Wills, vol.
1, p. 619, it is said that "the only mode of excluding the
title of whomsoever the law, in the absence of a disposition,
constitutes the successor to the property, is to give it to
some one else." In a note to this statement of the law, the
author quotes from Williams on Executors (6 Am. ed.),
p. 1306, that "it is settled that the testator may, if he
thinks fit, prevent a legacy from lapsing; though in order
to effect this object, he must declare, either expressly or in
terms, from which his intention can be with sufficient
clearness collected, what person or persons he intends to
substitute for the legatee dying in his lifetime. See, also,
Theobald on Wills, 443; 2 Redfield on Wills, 163; *Hutch-
inson's Appeal*, 34 Conn. 300," etc.

It will be asked, therefore, did Isaac Helms, in this devise,
create a substitute for the devisee James, upon the contin-
gency of the death of James before the death of said
Isaac? This question must be answered by ascertaining
from the will the intention of the testator. In ascertain-
ing his intention, we must observe the presumption of the
law against intestacy or partial intestacy. Beach on Wills,
p. 520, section 316, says: "Of two modes of interpreting
a will, that is preferred which will prevent either a total or
a partial intestacy."

Downey, C. J., in *Spurgeon* v. *Scheible*, 43 Ind. 216, said:
"A construction which would result in partial intestacy is
to be avoided, unless the language of the will is such as to
compel such construction. *Cate* v. *Cranor*, 30 Ind. 292."

In the event of the death of James without issue, the
testator said: "The above named real estate, one-third to
descend to his (James') wife, if living, and the remainder
to go to my children." There could be no reason for con-
struction here if instead of the word *descend* the testator
had used the word *go*, and we are unable to believe that
the word used was intended to provide for the contin-

gency of James surviving him, and of Sarah A. surviving James, without issue, when, as widow, she should be limited to one-third of the land. To hold that the word *descend* was used in the sense of a limitation upon the fee so clearly devised to James would not only be in denial of the presumptions we have cited, but would reduce the fee in James to an estate for life, with two-thirds over to the children of Isaac and one-third, under the law, to the widow of James. When it is remembered that the provision was made to take effect immediately upon the death of the testator, and as to those named in the devise capable of taking upon his death, it is the most reasonable conclusion that he intended, if James survived him, he should have the whole tract; but if he did not survive, the two-thirds should go to his children and the one-third to his daughter-in-law.

The construction contended for by the appellant is that the testator was providing a rule of descent, and not of devise. This contention, if applied to the contingent remainder bestowed upon the children, would be contrary to the plain words of the devise, and, when applied to the provision as to Sarah A., creates a partial intestacy, namely, as to one-third of the tract. The expression, "the remainder to go to my children," when considered in connection with an intention to bestow one-third upon the wife of James, is consistent, and any other construction would lead to the absurd end of creating and incorporating into his will a rule of descent, which could not take effect as to Sarah, but which, when applied to his children, gave them two-thirds, leaving an intestacy as to the other one-third, with no other than his children to take such one-third by descent, under the law.

Mr. Beach, in quoting from *Lasher* v. *Lasher*, 13 Barb. 106 (109), says: "Although the word *devise* is the appropriate term, in a will to pass real estate, and *bequeath* the term applicable to gifts of personal property, yet a strict

adherence to technical words is not necessary to give effect to any species of disposition;" and, says Mr. Beach (p. 4, section 2), "where the intention of the testator is plain, it will be allowed to control the legal operation of the words, however technical they may be. *Lasher* v. *Lasher*, 13 Barb.106 (110); *Jesson* v. *Wright*, 2 Bligh, 1; 2 Williams on Executors, 710." See, also, sections 308, 309, 311. In *State, ex rel.*, v. *Joyce*, 48 Ind. 310, in ascertaining and upholding the intention of the testator, the court went so far as to substitute for the word "majority," as used in the will, the word "minority," and in the course of the opinion it is said (p. 314): "Words in a will are to be understood to have been used by the testator in their common and ordinary sense." And in this sense the word "descend" may be held to mean *to go down*, to pass down from the elder, to be derived by the younger, the son's wife.

In the technical sense of the word, Sarah would not stand in the line of descent from Isaac, but in casting the contingent remainder in his lands by testamentary provision she did not stand beyond his reach, and the word should not be considered in its technical sense, where to do so would defeat the evident intention of the testator.

We hold, therefore, in response to the first question suggested by our statement of the record, that Sarah A. Helms took, under the will of Isaac Helms, a fee in one-third of the lands involved.

As to the second question, Did Orin H. Brown, the second husband and widower of said Sarah A., hold an interest in the undivided one-third of said lands of which Sarah died seized? Of this there can be no serious doubt. In fact, it is not contended that he did not become the owner of an undivided one-ninth part in value of said tract, and his children, the appellees, of the two-ninths part in value of said tract, if said Sarah A. was the owner of an undivided one-third of the tract, as we have held.

Borgner *v.* Brown *et al.*

The remaining question is upon the correctness of the judgment of the lower court in ordering partition setting off to the appellees, except said Orin H., the full one-third part in the value of said lands.

If the cross-complaint were clearly sufficient as a pleading, or if its sufficiency could not be questioned for the first time in this court, which we do not decide, the order of partition was erroneous and should have been modified upon the motion of the plaintiff. The only answer to this proposition by the appellees is that it is of no concern to the appellant if the court did adjudge the four children to be the owners of said undivided one-third interest in the lands. The cross-complaint was neither by nor against the appellee, Orin H. Brown, and he can not be held estopped by it to claim his undivided one-ninth interest in the land.

The finding of the court is for all of the defendants, including said Orin H.—this, of course, upon the complaint—and the finding and judgment then proceed in favor of the four defendants, other than Orin H., of course, upon the cross-complaint.

If the appellees, other than Orin H., are held to be the owners of one-third, and if Orin H. is not precluded from recovering his one-ninth, it would appear that the appellant ought to have some protection in her claims to the two-thirds. Her complaint is to quiet title, and the judgment has not the effect to do so. The facts before the court did not sustain a finding in favor of the children for the full one-third. As our conclusion will require further proceedings below, it is not necessary for us to pass upon the sufficiency of the cross-complaint. Its sufficiency, however, may be the subject of very serious inquiry.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

Filed January 27, 1893.