FIRST NAT. BANK OF COVINGTON, KY., et al. v. DE PAUW et al.

(Circuit Court of Appeals, Seventh Circuit. May 2, 1898.)

No. 385.

CONSTRUCTION OF A WILL—DEFEASIBLE ESTATE—DEATH WITHOUT ISSUE.

Testator, by a provision of his will, gave a fee absolute in certain property to his grandchildren, though containing no words of inheritance. In the next provision he stated "that the property willed by me to the said grandchildren should be held in common, and, if either of them should depart this life without leaving living issue, then and in that case the survivor or heirs of his body shall inherit all the property and estate devised to both of them." *Held*, that under the rule in Indiana the latter words referred to a death during the life of the testator, and, both devisees surviving him, each took an absolute estate in fee simple. 75 Fed. 775, reversed.

Appeal from the Circuit Court of the United States for the District of Indiana.

John R. Wilson and Ferdinand Winter, for appellants.

Charles L. Jewett, for appellees.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

WOODS, Circuit Judge. This suit was brought by the appellants, the First National Bank of Covington, Ky., the First National Bank of Troy, Ohio, the Trenton Banking Company of Trenton, N. J., the Hazelton National Bank of Hazelton, Pa., the Union National Mt. Joy Bank of Mt. Joy, Pa., judgment creditors of Charles W. De Pauw, against the said Charles W. and others concerned, to determine his interest in real estate levied upon, which had been devised to him by the last will of Elijah Newland, duly approved and admitted to probate on December 28, 1894, in Floyd county, Ind. The following clauses of the will only are pertinent to the present question:

"(4) I give and bequeath to my dearly beloved wife, Margaret Ann Newland, my town residence in the city of New Albany on lots as follows [description], with all household and kitchen furniture; also my family carriage and horses; also thirty thousand dollars in bonds, stocks, notes, and mortgages, to be selected by her.

"(5) I give and bequeath to my two grandsons, Newland T. De Pauw and Charles W. De Pauw, all my remaining estate, real, personal, and mixed, consisting of indebtedness due me in bonds, mortgages, and notes of hand, and all my lands situate in Floyd, Washington, Lawrence, and White counties, and any lands which may be possessed by me, and all my chattels upon the farms in Floyd, Washington, and Lawrence counties.

"(6) I have heretofore given to Newland T. De Pauw real estate to the value of $10,000, and I have given to Charles W. De Pauw cash to the amount of $6,000. I desire that of the property devised C. W. De Pauw should have $4,000, and that the property willed by me to the said grandchildren should be held in common, and, if either of them should depart this life without leaving living issue, then and in that case the survivor or the heirs of his body shall inherit all the property and estate to both of them.

"(7) It is my desire that, should my dear wife desire it, that, in place of the town residence bequeathed to her that she should take $10,000 in stocks or mortgages, etc., and that the town residence should, in that case, go to my grandchildren, Newland T. De Pauw and Charles W. De Pauw.

"(8) I hereby appoint my dear wife, Margaret Ann Newland, Newland T. De Pauw, and Charles W. De Pauw executors of this, my last will and testament, and I desire that no security be required of them or their bonds as executors."

This will was framed and written by the testator on May 30, 1887. His wife died August 20, 1893, and his death occurred on December 16, 1894. Some years after the making of the will he was put under guardianship as insane. James G. Harrison was appointed administrator with the will annexed on January 22, 1895, by the Floyd circuit court. Newland T. De Pauw was born September 5, 1856, was married October 15, 1879, and has two children, born, respectively, on August 22, 1880, and April 1, 1886. Charles W. De Pauw was born June 15, 1859, married February 22, 1888, and has never had a child. The fair value of the testator's property, consisting of bank stock, notes secured by mortgage, live stock and chattels on farms, and other personal property, and various farms in Indiana, was about $100,000; the personalty and realty being nearly of equal value.

The controlling question in the case is whether the words of the sixth clause of the will, "if either of them shall depart this life without leaving living issue," refer only to a death of either of the devisees before the demise of the testator, or to a death occurring at any time whether before or after that of the testator. There is, of course, no question of the cardinal rule "that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law." The contention of the appellants is that "the state of Indiana has an established policy and a settled rule of interpretation which determine the meaning of this will." That rule is alleged to be "that where an estate is devised in terms denoting an intention that the primary devisee shall take the property in fee or absolutely on the death of the testator, coupled with a devise over in case of his death without issue living, the words refer to a death without issue during the lifetime of the testator, and that the primary devisee surviving the testator takes the estate in fee or absolutely." This doctrine, it is insisted, is established by the decisions of the supreme court of the state in the following cases: Harris v. Carpenter, 109 Ind. 540, 10 N. E. 422; O'Boyle v. Thomas, 116 Ind. 243, 19 N. E. 112; Hoover v. Hoover, 116 Ind. 498, 19 N. E. 468; Heilman v. Heilman, 129 Ind. 59, 28 N. E. 310; Wright v. Charley, 129 Ind. 257, 28 N. E. 706; Borgner v. Brown, 133 Ind. 391, 33 N. E. 92; Fowler v. Duhme, 143 Ind. 248, 42 N. E. 623; Tindall v. Miller, 143 Ind. 337, 41 N. E. 535; Moores v. Hare, 144 Ind. 573, 43 N. E. 870; Antioch College v. Branson, 145 Ind. 312, 44 N. E. 314. A review of these cases is not necessary. In Fowler v. Duhme, supra, where the question is elaborately discussed, the court, after stating the rule "that a devise in fee may not be cut down by subsequent provisions of the will unless the intention to do so is manifest from words as clear, certain, and effective as those which created the fee," proceeds to say:

"Another rule, and that which is of the greatest significance in the construction of the will before us, is, as said in Wright v. Charley, supra, 'that where real estate is devised in terms denoting an intention that the primary devisee shall take a fee on the death of the testator, coupled with a devise over in case of his death without issue, the words refer to a death without issue during the lifetime of the testator, and that the primary devisee surviving the testator takes an absolute estate in fee simple.' This rule may be said to be almost, if not entirely, free from conflict upon the decisions, and there is no doubt of its adoption in this state and that it is supported by the vast weight of authority."

The rule is reaffirmed in Moore v. Gary (Ind. Sup.) 48 N. E. 630. The distinction asserted between the will of Fowler, passed upon in the case quoted, and that of Newland in this case, on the ground that in the latter no words of inheritance are used, is not substantial. The meaning of the fifth clause of this will is the same as if after the names of the devisees there had been inserted the words "and their heirs forever," or "in fee simple"; and the presumption is not admissible that Newland did not understand the effect of the words employed in that clause to be to give to the devisees the entire interest in the property—the fee simple of the real estate. Indeed, it is only those who have a measure of technical learning who would be likely to apprehend a necessity for the use of the word "heirs" in the expression of a grant or a devise in order to create an estate in

fee, and not merely an estate for life; and, without first denying to the fifth clause of this will its plain and presumably well-understood meaning, it is impossible to say that no violence is done to the words there employed by construing them, in connection with the sixth clause, as creating a base fee in the first takers. The expressed desire that the property given to the grandchildren "be held in common," whatever its force, could, of course, take effect only after the death of the testator, but plainly is equally applicable and binding, if binding at all, during the joint lives of the devisees, whether the estates devised are of one character or the other; and it is therefore of no necessary significance that that expression is immediately followed by the provision that upon the death of either devisee without living issue the survivor "shall inherit all the property and estate (devised) to both of them." It is not perceived why that provision, found as it is at the end of the sixth clause, has a different force from what it would have if placed at the end of the fifth clause, and no sufficient reason has been advanced for taking it out of the rule so often and clearly declared by the supreme court of the state, in the light of which, in the absence of clear expression or necessary implication to the contrary, the testator must be presumed to have intended that his will should be read.

Reference has been made to Abbott v. Essex Co., 18 How. 202; Britton v. Thornton, 112 U. S. 526, 5 Sup. Ct. 291; O'Mahoney v. Burdett, L. R. 7 H. L. 388. But, even if inconsistent, those cases contain nothing which could justify us in disregarding the settled rule of the state where the property is, and where the testator lived and died. In Abbott v. Essex Co. it seems to have been assumed without question that the death referred to of one of the devisees "without any lawful heirs of their own," which was held to mean a definite failure of issue, might occur after the death of the testator. The question considered was whether the will gave "estates in fee tail general, with cross remainders in fee simple," or "a fee simple conditional, with executory devises over." In Britton v. Thornton the expression of the will was "dying in her minority," which, of course, might be after the death of the testator. The decree below is reversed, with directions to proceed in accordance with this opinion.