BUSICK ET AL. v. BUSICK ET AL.

[No. 9,681. Filed April 6, 1917. Rehearing denied June 29, 1917. Transfer denied November 16, 1917.]

1. WILLS.—Construction.—Intention of Testator.—The purpose of construing a will is to give effect to the intention of the testator as expressed by the language employed, if not inconsistent with established principles of law, but where the intention is plain there is no construction required. p. 664.

2. WILLS.—Construction.—Ambiguity.—Application of Rules of Construction.—A will devising certain real estate to testator's son for life and providing that "at his death the same shall vest in and equally belong to his lawful children, who may survive him," and, if such son should die, "leaving no children alive at such time, then I will and direct that such real estate shall revert to my estate," to be disposed of as directed in a subsequent item, providing for the distribution of property not specifically disposed of by the will, and that the realty devised to the son, in case he died without children, should "descend and pass" in the manner set forth in such item, is ambiguous as to when the title vests in the life tenant's children so as to require the court to determine its construction from a consideration of all its provisions to ascertain the testator's intention. pp. 665, 669.

3. WILLS.—Construction.—"Vest."—The word "vest" may denote either a vesting in interest, or a vesting in possession. p. 668.

4. WILLS.—Construction.—"Revert."—The word "revert" may be used in the sense of "go" or "pass." p. 669.

5. WILLS.—Construction.—Descend.—The word "descend" may be used in the sense of "go" and will be so construed where that meaning more effectually carries out the intention of the testator. p. 669.

6. WILLS.— Construction.— Vesting of Estates.— The law so

favors the vesting of estates at the earliest opportunity and is so averse to a postponement thereof that they will be deemed as vesting at the earliest possible period in the absence of a clear manifestation of the contrary intention. p. 670.

7. WILLS.—*Construction.*—*Words of Postponement.*—*Words of Survivorship.*—Words of postponement in a will are presumed to relate to the beginning of the enjoyment of the estate, rather than to its vesting, and words of survivorship are presumed to relate to the death of the testator, rather than to that of the first taker, if they are fairly capable of such interpretation. p. 671.

8. WILLS.— *Construction.*— *Limitations.*— *Remainders.*—A limitation in a will will not be construed as an executory devise when it can take effect as a remainder, nor a remainder to be contingent where it can be taken as vested. p. 671.

9. WILLS.—*Construction.*—*Life Estate with Limitation Over.*—*Vesting of Estate.*—An item of a will devising a life estate in certain lands to testator's son and providing that at his death the "same shall vest in and equally belong to his lawful children, who may survive him" and that the land devised shall revert to the estate if the life tenant die leaving no children, creates a life estate, with the remainder in fee to the life tenant's children living at the time of the testator's death, subject to a diminution of their shares to let in children subsequently born during the life tenancy, and on the death of such children before their parents, the latter acquired the fee-simple title to the realty devised. p. 675.

10. TRIAL.—*Dismissal as to Certain Parties.*—*Findings and Conclusions of Law.*—Where an action to quiet title was dismissed as to certain defendants, findings of fact and conclusions of law as to such parties are outside the issues and unwarranted. p. 675.

11. JUDGMENT.—*Conclusiveness.*—In an action to quiet title to lands devised by will, plaintiffs were bound neither by a decree in an action to construe certain items of the will, where the decree stipulated that it should not be conclusive, nor by the judgment in a proceeding to construe another item wherein certain defendants, although parties in interest to such proceedings, were not made parties thereto. p. 676.

From Wabash Circuit Court; *Charles A. Cole,* Special Judge.

Action by Gillen D. Busick and others against Kate M. Busick and others. From a judgment rendered, plaintiffs appeal. *Reversed.*

*Elias D. Salsbury, Frank S. Roby* and *Walter S. Bent,* for appellants.

*Warren G. Sayre* and *H. N. Hipskind,* for appellees.

FELT, C. J.—This suit was brought by appellants against appellees to quiet the title to certain real estate in Wabash and Huntington counties, Indiana. Issues were formed by a general denial to the complaint and by an agreement that all defenses might be made under such denial. On due request the court made a special finding of facts and stated conclusions of law thereon, which were in favor of appellees. The judgment follows the conclusions of, law. The errors assigned question the correctness of each of the conclusions of law.

The facts found are in substance as follows: Joseph W. Busick died testate on March 8, 1897, leaving surviving him his wife, Kate M. Busick, his daughter Marguerite Bailey, the child of Kate M. Busick, and his son Gillen D. Busick by a former wife, and Allen G. Busick, an adopted son. The will was executed October 16, 1896, and was duly probated in the Wabash Circuit Court on March 12, 1897, and as far as material here provides in substance as follows: In item 1 the testator bequeathes to his wife his household goods, furniture and library. Item 2 directs his executors to make an inventory of all his property except that devised by item 1, and to cause the same to be appraised at its cash value, but provides that for the purposes of distribution under the will certain real estate shall be taken at the value fixed by the testator, and the item also directs the payment of all just debts of the testator. Item 3 forgives and eliminates from his estate all advancements made to his sons, and directs that an advancement of $9,000 made to his daughter be charged against her, and that all other debts due him from her be forgiven. Items 4, 5 and 6 describe various lots and

tracts of real estate and fix the value at which they are
to be taken by the legatees under the will. Item 7 de-
vises and bequeaths to the testator's wife, Kate ˙ M.
Busick, his residence valued at $8,500, a storeroom
and lot valued at $11,000, and a sufficient amount of
other property to be selected by her at the appraised
value, sufficient to make the whole amount of property
received by her equal in value to one-third of the entire
estate. Item 8 is as follows:

> "I will and devise to my son, Gillen D. Busick,
> the west farm containing 274 acres, and the Chase
> property on Manchester avenue in the city of Wa-
> bash, all in Wabash County, Indiana, and by me
> valued at Sixteen Thousand and Seven Hundred
> Dollars, and more fully described in Item 6 above
> to have and to use the same, and the rents and
> profits thereof during the full period of his natural
> life, and at his death the same shall vest in and
> equally belong to his lawful children, who may sur-
> vive him, and in case my said son, Gillen D. Busick,
> die, leaving no children alive at such time, then I
> will and direct that said real estate shall revert to
> my estate and be disposed of as provided in Item
> 10, hereinafter set out."

Item 9 devises certain specified property to Marguerite
Bailey under the same conditions and by the same pro-
visions as those of item 8. By item 10 the testator gives
certain directions for setting off to his wife the prop-
erty devised to her and to his children the property
devised to them, and then provides that his property
not specifically disposed of by the will shall be reduced
to cash or securities by his executors, and that they—

> "shall keep the same, to the best advantage in-
> vested in interest-bearing securities one-half there-
> of for the benefit and use of my said son Gillen
> D. Busick, and one-half thereof for the benefit of
> my daughter Marguerite, to be held in trust for
> each of them, and the one-tenth part of the same,
> and the annual interest on the whole of such half,
> less ˙ the actual and necessary expense be paid to

each, each year, the whole of each one's share being paid to them in ten years, should they live so long, but in case of the death of either or both before such ten years shall have elapsed leaving children surviving them, then in such case, the amount unpaid shall be put at interest for the benefit of the surviving children, and the interest thereon used for their maintenance, and the principal of such share shall be equally divided among such children as they reach the age of twenty-one years, and should none of the children of my daughter Marguerite live to the age of twenty-one years, then the children of my son Gillen D. Busick who live to the age of twenty-one years, shall be paid the entire portion remaining, and should none of the children of Gillen D. Busick live to the age of 21 years and the children of my daughter Marguerite reach the age of 21 years, then in such case the entire portion remaining shall belong to her children, and in the event of the death of both of said Gillen D. and said Marguerite, leaving no children surviving them, then whatever remains of my estate at such time shall be divided into two equal parts, one part to my wife Kate M. Busick, if she be living, and the other part to be divided equally between the children of my brother E. D. Busick, and those of my sister Mary Garron and if my said wife be not living at such time, then all shall be divided between the children of my said brother and sister one-half to each family.

"And I further will and direct that the real estate heretofore described and willed to my said son and daughter under conditions expressed shall in case they die without living children, shall in such case descend and pass in precisely the same manner and course as set out above in this item in reference to personal property under the same condition."

By item 14, $1,000 is devised to Allen G. Busick, the adopted son. In item 15 the testator describes certain real estate owned by him in Huntington county, Indiana, and then provides that:

"Now in order to make the amount of land set apart for use of my said children more nearly equal

·in value than as hereinabove set forth, I will and direct that the above and foregoing described land in Huntington county, Indiana, in addition to land named and described in item 8 above set apart for the use of my said son Gillen D. Busick, in exactly the same way as other land devised to him, with this further condition that the 33 acres be his absolutely in fee simple, and the remainder may be sold at any time by my executors and the amount realized therefrom be added by them to his share of personal property, and then take precisely the same course as other personal property devised by me for his use, and the above tract shall be set aside for his use and added to his interest prior to the division provided for in item 10 above."

The court also found that the testator was at the time of his death the owner in fee simple of the real estate devised by him and that the appraised value of his estate was $109,043.55; that his widow elected to take under the will; that the three executors named in the will duly qualified but two resigned, leaving Kate M. Busick, sole executrix; that the estate was settled and the executrix duly discharged on April 19, 1900; that at the time of the making of the will and of the testator's death Gillen D. Busick was thirty-six years of age and had an expectancy of thirty to thirty-one years according to the Carlisle tables of mortality, and Marguerite Bailey was thirty years of age; that at the time of the death of the testator Gillen D. Busick had two children living, Josephine Busick, born on December 31, 1886, and who at the death of the testator had an expectancy of forty-eight to forty-nine years, and who died intestate on June 11, 1897; LaMoine Busick, his son, born June 12, 1888, who at the death of the testator had an expectantcy of fifty to fifty-one years, and who died intestate on August 21, 1908; that said Josephine left surviving her as her only heirs at law, her father and mother aforesaid, and her brother, LaMoine Busick; that LaMoine Busick died unmarried

leaving as his only heirs at law his mother, Kate M. Busick, and his father, Gillen D. Busick; that the trust created by item 10 of the testator's will was finally settled on or about November 26, 1907, and the trustee fully discharged; that on November 1, 1908, Gillen D. Busick commenced a proceeding in the Wabash Circuit Court to construe item 15 of said will and made parties thereto Kate M. Busick, executrix, Kate Busick, Marguerite Bailey, Robert Bailey, and LaMoine Busick, and upon issues joined the court decreed that the executors were invested with discretionary power, and having refused to sell the land, the "plaintiff takes under the terms of item 15 of said will, a life estate in said lands and that the remainder goes in the same manner as the other lands devised to the plaintiff under the terms of said will as set out in item 8 thereof; that said decree was not appealed from and still remains in force"; that on February 14, 1912, Gillen D. Busick and Rose M. Busick filed their complaint in the Wabash Circuit Court, to quiet title to the lands described in item 8 aforesaid making defendants thereto the defendants to this suit; that a cross-complaint was filed in said suit by a party claiming an interest in the land and thereafter the complaint was dismissed, and on April 8, 1913, by agreement of the parties, a receiver was appointed to lease the real estate, collect rents and pay taxes, costs and charges, and the order appointing such receiver provides that "this decree and stipulation shall at no time become or be construed as an adjudication of any question of law or fact or as an adjudication of any issue raised by the pleadings filed or evidence given in this cause"; that said real estate had been sold for taxes and said receiver was ordered to settle the taxes and obtain quit-claim deeds from the parties holding such tax liens, which deeds were to be made to Gillen D. Busick and others claiming an interest in the

land and such quit-claim deeds were by such order of court to provide "that redemption from said sales is made by the receiver by order of court, for the benefit of all parties interested in said real estate." The finding sets out facts to show that the receiver carried out the order of the court; that when the farm of 274 acres was sold for taxes it was listed in the name of Gillen D. and Rose M. Busick, and the real estate in the city was listed for taxes in the name of Rose M. Busick, trustee; that when he made his will the testator had the advice and counsel of Oliver H. Bogue, a practicing attorney, who also wrote said will; that the defendants each claim some right, title, or interest to the real estate described in the complaint or in some part thereof, which claims are adverse to and inconsistent with "plaintiff's title to said real estate in fee simple." The finding sets out the names of the defendants and their relationship and shows their interest in the litigation and their claims to title in all or certain portions of the real estate in controversy. It also shows that on April 14, 1911, Gillen D. Busick leased the Huntington county farm known as the "Grundy farm" to Michael and Margaret Shannahan for a period of five years for $500 and on November 7, 1911, executed to said lessees a quit-claim deed therefor, and received a total consideration for such lease and deed the sum of $800; that Rose M. Busick did not join in the execution of either the deed or lease aforesaid. The findings also show certain conveyances by Gillen D. to Rose M. Busick.

On the foregoing finding of facts the court stated its conclusions of law in substance as follows: (1) That under the will of Joseph W. Busick, Gillen D. Busick became the owner of a life estate in the real estate described in the complaint and such estate is still held by him and Rose M. Busick, as grantees under conveyances aforesaid, except the "Grundy" Huntington

county farm. (2) "That the said LaMoine Busick and Josephine Busick did not nor did either of them take under the said will of Joseph W. Busick or hold at the time of their respective deaths, any indefeasible estate of inheritance in the real estate described in plaintiff's complaint." (3) "That the plaintiffs, Gillen D. Busick and Rose M. Busick did not inherit from their said son, LaMoine Busick or their daughter, Josephine Busick, any interest in the said real estate or any part thereof, in fee simple." (4) That Michael and Margaret Shannahan are the owners and in possession under the lease and deed from Gillen D. Busick of the Huntington county farm, known as the "Grundy" farm for the period of the life of said Busick, except 33 acres conveyed by Gillen D. Busick to John C. McAlpine. (5) "That the defendants, Kate M. Busick, Emily Caffee, Mame D. Robbins, Charles C. Busick, Emery D. Busick, John W. Busick, Ida J. Logan, Bell Mathews, Claude Caffee, Arlie Caffee, Edward Gehring, Roland Gehring, Joseph Gehring, Bird Wilson and the unknown heirs of Bird Wilson, are entitled to take said real estate in fee simple under the said will of Joseph W. Busick on the death of said Gillen D. Busick, leaving no children surviving him." (6) "That the plaintiffs are not entitled to have their title to said real estate in fee simple quieted against the defendants herein."

The controversy between appellants and appellees centers in item 8 of the will of Joseph W. Busick and involves other portions of the will which are related thereto. Appellants contend that the eighth clause of the will devises a life estate in the real estate therein mentioned to Gillen D. Busick, with a remainder in fee to his children which vested at the time of the death of the testator, subject to such life estate; that at the death of such children, subsequent to the death of the testator, appellants inherited title from them.

The trial court held that the children of Gillen D. Busick living at the time of the death of the testator did not acquire an indefeasible estate of inheritance in the real estate mentioned in item 8, and consequently appellants, at the death of such children, subsequent to the death of the testator, did not inherit title from them.

In support of the judgment of the trial court, appellees assert that the will is unambiguous, and that the plain meaning of its provisions clearly indicate that the intention of the testator was followed and given effect by the conclusions of law and the judgment rendered thereon; that by the use of the words "vest" and "revert" the testator employed terms of definite legal signification which so clearly indicate his intention as to leave no room for the application of rules of construction in construing the will.

We shall first examine the provisions of the will to determine whether in construing it there is any necessity for resorting to rules of construction, or whether the provisions so clearly and plainly indicate the intention of the testator as to make the application of rules of construction improper and unnecessary.

The purpose of construing any will is to ascertain and give effect to the intention of the testator as expressed by the language employed, if not inconsistent with established principles of law. Where the intention is plain and so clearly expressed as to be readily ascertained by a consideration of all the provisions of the will, there is no need of resorting to rules, for no construction is required and all that remains to be done is to execute the expressed intentions of the testator. *Alsman* v. *Walters* (1915), 184 Ind. 565, 106 N. E. 879, 111 N. E. 921; *Smith* v. *Smith* (1915), 59 Ind. App. 169, 173, 109 N. E. 60; *Hillis* v. *Dils* (1913), 53 Ind. App. 576, 580, 100 N. E. 1047, 102 N. E. 140.

In the first clause of the will the testator expresses

the intention of disposing of his "entire estate, both real and personal," and in item 11 the same idea is

2. expressed. The testator therein states that the foregoing provisions relating to personal property are subject to the payment of his just debts, including expenses of last sickness, funeral, and costs of administration and then says: "Whatever may then remain shall be considered my estate of which my said wife shall have one-third, and the two-thirds to the children and all costs, expenses and taxes affecting the portions set off to my said children shall be paid from such portions."

The will shows that the testator had a wife, two natural children and an adopted son, living when the instrument was executed, and at the time of his death, to whom he devised certain real estate and made bequests of personal property. He also made provision for his grandchildren and for collateral kindred, the children of his brother and sister, under certain named conditions. The will indicated that certain amounts of money had previously been paid to each, the natural and adopted son, and all such amounts were forgiven. By item 14 the adopted son was bequeathed the sum of $1,000. All sums previously paid the daughter were forgiven except an advancement of $9,000. The latter portions of items 8 and 9 indicate an intention to have the property devised to his son and daughter stay in the natural family, and follow the blood of the direct line, and upon failure of such line, to go to collateral kindred, the children of his brother and sister. These provisions, taken in connection with the provision made for his adopted son, indicate that the amounts forgiven and the specific bequest to the adopted son include all the testator intended him to recover from his estate in any event and at any time.

Eliminating the adopted son in the manner above in-

dicated, the general scheme of the will indicates an intention to make provision for the objects of the testator's bounty in the order following, viz.: (1) His wife; (2) his son and daughter; (3) his grandchildren; (4) the children of his brother and sister.

The language of item 8, "and in case my said son, Gillen D. Busick, *die, leaving no children alive at such time,* (our italics) then I will and direct that said real estate shall revert to my estate and be disposed of as provided in item 10," does not definitely indicate whether the death of the son therein mentioned refers to his death in the lifetime of the testator, or at some time subsequent to the death of the testator, or to such death without any reference to the time of the death of the testator. The same is true of the language of item 9 by which property is devised to the daughter, Marguerite Bailey.

The concluding sentences of items 8 and 9 refer to item 10, which provides that the real estate devised to his son and daughter, under certain conditions, shall *"in case they die* without living children * * *, descend and pass in precisely the same manner and course as set out above in this item in reference to personal property under the same condition." Here again the will is indefinite as to whether the death of the son or daughter therein mentioned refers to such death in the lifetime of the testator, or means such death at any time without reference to the death of the testator.

If the intention of the testator was primarily to dispose of all his estate to the objects of his bounty, in any contingency that might arise, and to so frame his will that in any event that might arise his adopted son would not receive any part of his estate except the portion bequeathed to him by the will, then it is apparent that the language of the latter part of items 8, 9, and 10 is appropriate to make effective such intention. For

if all the devisees named in items 8 and 9 should have died in the lifetime of the testator, then without the reference to item 10 in items 8 and 9 and the provisions of item 10 above mentioned such devises would have lapsed and the adopted son, if living, would have obtained an interest by inheritance in the property devised by said items 8 and 9.

If the testator intended to provide for conditions that would arise if the devisees named in items 8 and 9, or either of them, should die in his lifetime, then the language used in the latter part of item 10 would be appropriate, for in that event the property mentioned in items 8 and 9, or either of them, would *"descend"* from him at his death, whereas, if reference was to a death subsequent to the death of the testator, title could not then *"descend"* from him, for under such interpretation title would have passed to some devisee or devisees under the will, and "descend" would not be an apt or appropriate word to express the apparent intention under such interpretation. 3 Words and Phrases 2012. Assuming that the word "descend" was used advisedly, as we must do if there is nothing to indicate that it was not so used, it tends to indicate a reference in the latter part of item 10 to a death in the lifetime of the testator.

Furthermore, the provision in the latter part of item 10 to the effect that such property shall pass "in precisely the same manner and course as set out above in this item in reference to personal property under the same condition," tends to render doubtful the conclusion that the testator intended to defer the vesting of title in fee to the property devised by items 8 and 9 until the death of his son and daughter at a time subsequent to his own death.

But appellees further contend that all doubt or ambiguity is removed by the use of the words "vest" and "revert."

The Century Dictionary indicates that the word "vest" has various meanings and applications, among them the following:    (a) "To put in possession; 3.    to put more or less formally in occupation."    (b) "To place or put in possession or at the disposal of; give or confer formally or legally an immediate fixed right of present or future possession, occupancy or enjoyment of"; (c) "To come or descend; devolve, take effect as a title or right."    (d) *To vest in interest,* to pass or devolve as matter of right or title irrespective of any immediate right of possession."    (e) *"To vest in possession,* to pass in possession or immediate right of possession."    The word has been defined to signify an immediate right of present or future enjoyment. *Stewart* v. *Harriman* (1875), 56 N. H. 25, 29, 22 Am. Rep. 408; 8 Words and Phrases 7302.    In some instances the word has been held to have been used in the sense of "payable." *Phillips' Estate* (1903), 205 Pa. 504, 55 Atl. 210, 211, 97 Am. St. 743.    The word "vest" may denote either a vesting in interest, or a vesting in possession.    8 Words and Phrases 7302; *Burney* v. *Arnold* (1909), 134 Ga. 141, 148, 67 S. E. 712; *Jacobs* v. *Whitney* (1910), 205 Mass. 477, 481, 91 N. E. 1009, 1011, 18 Ann. Cas. 576; *Loventhal* v. *Home Ins. Co.* (1895), 112 Ala. 108, 20 South. 419, 33 L. R. A. 258, 57 Am. St. 17, 20; *McGillis* v. *McGillis* (1896), 11 App. Div. 359, 42 N. Y. Sup. 921, 924; *Hennessy* v. *Patterson* (1881), 85 N. Y. 91, 103.    In *Burney* v. *Arnold, supra,* the Supreme Court of Georgia said:    "Counsel in the present case insists, however, that, there being no remainder created in the deed except by the words 'at her death to go and vest in,' etc., the use of the additional words 'and vest in,' must necessarily have been employed to convey some meaning, and since the words 'to go' are sufficient to indicate the idea of carrying the possession, the words 'and vest in' must be construed

as expressing an intention of the grantor that there should be no vesting in interest until the death of the life-tenant. While this argument is a plausible one, in arriving at the intent of the grantor it must be borne in mind that the word 'vest' has a double meaning; it is employed to denote either 'a vesting in interest,' or 'a vesting in possession.' If employed by the grantor in the latter sense, it would have no further effect than if the grantor had declared that the property at the death of the life-tenant was 'to go to and be possessed by' the remaindermen." In *Hennessy* v. *Patterson, supra,* the New York Court of Appeals said: "In his chapter on executory devises Washburn reminds us of the necessity of distinguishing 'between the vesting of a *right* to a future estate of freehold, the vesting of a *freehold estate* in interest, and the vesting of the same in possession.' "

The word "revert" is not always used in the same sense, and is sometimes used in the sense of "go" or "pass." *Warrum* v. *White* (1908), 171 Ind. 574, 578, 86 N. E. 959. Likewise the word "descend" is sometimes used in the sense of "go" and will be held to have been so used where such meaning seems to more effectually carry out the intention of the testator. *Borgner* v. *Brown* (1893), 133 Ind. 391, 396, 33 N. E. 92; *Rountree* v. *Pursell* (1895), 11 Ind. App. 522, 532, 39 N. E. 747.

While the foregoing observations are not the only considerations suggested by the various provisions of the will, and others may be apparent which tend to support the conclusions of the trial court, we nevertheless believe the observations above made are amply sufficient to warrant the conclusion that the intention of the testator to defer the vesting of title in the children of his son and daughter, until the death of the latter at any time, is not so clearly apparent from

the provisions of the will as to remove all doubt that such was his intention.

We therefore conclude that there is such ambiguity in the provisions of the will that the policy of the law makes it our duty to invoke the established rules of construction to aid the court in ascertaining and giving effect to the intention of the testator as gathered from a due consideration of all the provisions of the will. *Alsman* v. *Walters, supra; Aldred* v. *Sylvester* (1915), 184 Ind. 542, 111 N. E. 914, 916; *Smith* v. *Smith, supra.*

The finding of facts shows that the testator in making his will had the advice of a lawyer who also wrote the will. The instrument bears date of October 16, 1896, and shortly prior thereto some important decisions had been rendered by the Supreme Court of this state, which deal with questions that arise under the provisions of the will now under consideration. *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623; *Tindall* v. *Miller* (1896), 143 Ind. 337, 41 N. E. 535; *Moores* v. *Hare* (1896), 144 Ind. 573, 43 N. E. 870; *Antioch College, etc.* v. *Branson* (1896), 145 Ind. 312, 44 N. E. 314; *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Borgner* v. *Brown, supra.*

The rules of construction applicable to the case at bar have been stated and reiterated many times. There is little, if any, dispute as to such rules and the controversy usually arises in determining the necessity for their application, and in applying them to particular cases. Our Supreme Court, in the case of *Aldred* v. *Sylvester, supra,* recently made a terse statement of the principle rules applicable here as follows: "This court has with practical uniformity and consistency recognized the existence of the following rules where particular and future estates are created: (1) the law so favors the vesting of estates at the earliest opportunity and is so adverse to a postponement

thereof that they will be deemed as vesting at the earliest possible period, in the absence of a 7. clear manifestation of the contrary intention; (2) words of postponement are presumed to relate to the beginning of the enjoyment of the estate, rather than to its vesting; (3) words of survivorship are presumed to relate to the death of testator, rather than that of the first taker, if they are fairly capable of such interpretation. *Aspey* v. *Lewis* (1899), 152 Ind. 493, 52 N. E. 756; *Myers* v. *Carney* (1908), 171 Ind. 379, 84 N. E. 400; *Fowler* v. *Duhme* (1896), 143 Ind. 248, 42 N. E. 623; *Campbell* v. *Bradford* (1906), 166 Ind. 451, 77 N. E. 849; *Taylor* v. *Stephens, supra; Moores* v. *Hare* (1896), 144 Ind. 573, 43 N. E. 870; *Tindall* v. *Miller* (1896), 143 Ind. 337, 41 N. E. 535; *Borgner* v. *Brown* (1893), 133 Ind. 391, 33 N. E. 92; *Wright* v. *Charley* (1891), 129 Ind. 257, 28 N. E. 706; *Heilman* v. *Heilman* (1891), 129 Ind. 59, 28 N. E. 310; *Bruce* v. *Bissel* (1889), 119 Ind. 525, 22 N. E. 4, 12 Am. St. 436; *Amos* v. *Amos* (1889), 117 Ind. 19, 19 N. E. 539; *Hoover* v. *Hoover* (1888), 116 Ind. 498, 19 N. E. 468; *Harris* v. *Carpenter* (1887), 109 Ind. 540, 10 N. E. 422; *Davidson* v. *Koehler* (1881), 76 Ind. 398; *Rumsey* v. *Durham* (1854), 5 Ind. 71.

"It is also well settled by our decisions that courts will not construe a limitation into an executory devise when it can take effect as a remainder nor a re8. mainder to be contingent where it can be taken as vested. *Fowler* v. *Duhme, supra,* 267; *Carnahan* v. *Freeman* (1915), 108 N. E. 955; *Moore* v. *Lyons* (1840), 25 Wend. 119."

Without repeating here, we adopt as pertinent to the case at bar the recent exhaustive review of the decisions and authorities by our Supreme Court in the following cases: *Alsman* v. *Walters, supra; Aldred* v. *Sylvester, supra.*

*Fowler* v. *Duhme, supra,* is a leading case on the subject now under consideration, has been cited and followed in many decisions, and is of special importance here because of the similarity in meaning of the language employed in the will under consideration in that case, to that over which the controversy arises here. In that case the testator devised the residue of his estate to his children subject to the following conditions, viz.— "(a) In the event of the death of any of my said children without lawful issue *living at the time of the death of such child,* then the share of such deceased child shall vest in, and become the absolute property in fee simple, in equal portions, of such of my said children as shall then be living, and the living descendants of such, if any, as may then be dead, the descendants of any deceased child taking, between them, the share which, if living, would have vested in their father or mother."

In that case it was contended by Mrs. Duhme, a daughter of the testator, that she acquired a fee-simple title to the property devised to her and that clause "a" had reference only to a death occurring in the lifetime of the testator. Those opposing her contended that such clause referred to death after the death of the testator and that Mrs. Duhme's title was a determinable fee, which in case she died without issue living, would determine, and that in such event the fee-simple title was limited over by executory devise to certain designated persons.

After an exhaustive review of the subject and authorities, the court held that the children of the testator took a fee-simple title which vested absolutely at the testator's death.

In discussing clause "a" the Supreme Court said: "It expresses a contingency in which the property devised should go to others than the named devisees, but omits to state the time within which such contingency

must happen. The law supplies that omission by holding that the time shall be directed to a period before the testator's death. If the clause read: 'In the event of the death,' before my death, 'of any of my said children,' etc., there could be no reasonable ground of contention, and, as we have seen, the law supplies these words where to do so they do not oppose the manifest intention of the testator. Here, as in *Boraston's Appeal, supra; Moore* v. *Lyons, supra; Doe* v. *Sparrow, supra; Woodburne* v. *Woodburne, supra,* and *Mickley's Appeal,* counsel attach considerable importance to the adverb of time *then,* as employed in the clause in question, and seek to refer it to the death, at any time, of the immediate devisee. Such words are held by the cases cited not to relate to the vesting of the estate in interest. The word as employed has direct reference to an event, the death of a child, and not to a time. This use of the word is consistent with the construction of the clause which requires us to apply the rule of survivorship to a period during the lifetime of the testator, it is consistent with the idea that a will speaks with reference to conditions which may exist at the time of the testator's death, it is consistent with the closing phrase of the clause: 'The descendants of any deceased child taking between them the share which, if living, would have vested in their father or mother.' *Vesting* occurs at the death of a testator and not before.

"The word, as it is each time employed, is not inconsistent with the idea of a contingency, the death of a child, occurring during the lifetime of the testator, and as we have seen it must be found inconsistent with that idea before we could give it effect to deny the application of the rule directing the time of indefinitely expressed survivorship."

In *Alsman* v. *Walters, supra,* the language of the de-

vise considered was: "I give and bequeath to my son, Francis M. Walters, during his natural life and after his death to his children surviving him in fee simple." ⸱ In considering the meaning and effect of the foregoing language the court said: "Where a life estate is carved out, with a gift over to children of the life tenant, the gift not only embraces the children living at testator's death, but also all who may come into existence during the life tenancy. In such case, the children alive at testator's death take an immediately vested interest subject to a diminution of their shares to let in such others as may be born during the life tenancy. * * * It will be observed here that while the testator makes the gift, after the death of Francis, 'to his children surviving him' the estate devised is a 'fee simple.' * * * In ascertaining the testator's intent consideration must be given to all the words in the will, and a court is not at liberty to heed one phrase and disregard another. * * * The cases cited discuss the rules of construction to which we have referred. These rules are not mere arbitrary formalities. They have been formulated to aid in the ascertainment of the testator's true intent and prevent its subversion by ascribing a meaning to a word, perhaps carelessly used, which conflicts with the general intent of the testator. *Aspy* v. *Lewis, supra.* They are the product of wisdom and experience of the ages in seeking amid ambiguous phrases, the intent of those engaged in the serious and solemn business of making a final disposition of property by will. * * * We are of the opinion that on the death of Luke Walters the fee simple title to the land in question vested absolutely in appellee and appellant's mother, subject to diminution to let in afterborn children."

The language of the devise in the will considered in *Smith* v. *Smith, supra,* and the facts of the case give it

weight and special significance when applied to the facts of this case and the language of the devise now under investigation.

In the light of the foregoing decisions, and the numerous cases therein cited, and especially the more recent decisions of our Supreme Court, we hold that

9. by clause 8 of the will of Joseph W. Busick, deceased, he devised a life estate to his son Gillen D. Busick, in the real estate therein mentioned and described, and the remainder in fee to the children of Gillen D. living at the time of the death of the testator, subject to a diminution of their shares to let in other children of Gillen D., if any, born during the life tenancy. *Alsman* v. *Walters, supra. Coquillard* v. *Coquillard* (1916), 62 Ind. App. 489, 113 N. E. 481, 483.

From this it follows that upon the death of the children of Gillen D. and Rose M. Busick as found by the trial court, their parents, the appellants, inherited from them title to the real estate mentioned and described in items 6 and 8 of said will, and by virtue thereof, and of the conveyances found by the court, hold the fee-simple title to said real estate in the proportions found by the trial court, except such interests or portions thereof as may have been conveyed subsequently to the death of the children aforesaid.

The complaint having been dismissed by appellants as to Michael and Margaret Shannahan, the find-

10. ing of facts as to them is outside the issues and the fourth conclusion of law was unwarranted.

Our conclusions already announced indicate that the appellees, the children and descendants, or representatives, of the brother and sister of the testator mentioned in item 10 of the will, have not now, nor can they on the facts found by the court, by virtue of the provisions of said will, ever obtain any interest in the real estate in controversy.

The contention that appellants are bound by the construction placed on the will by the parties in interest cannot be sustained on the facts found by the trial court. In one instance mentioned in the finding of facts on which this contention is based, it is shown that by agreement of the parties and by the order and decree of the court, it was definitely settled that no such result should follow.

In the proceedings to construe item 15 of the will, the parties here claiming adversely to appellants were not parties, for the finding shows that Kate M. Busick, executrix, Kate Busick, the widow of the testator, Marguerite Bailey, daughter of the testator, Robert Bailey and LaMoine Busick, were the only parties, none of whom are claiming adversely to appellants. Furthermore, the provisions of items 8 and 9 were not construed, nor was the intention of the testator, as evidenced by a consideration of the whole will settled or adjudicated. The dealings with the Shannahans, as already shown, were not in issue and in any view of such facts they are not sufficient to preclude appellants from asserting their rights as against the claims of the appellees.

Other questions discussed are disposed of by the conclusions already announced, and there is no necessity for giving them further consideration.

From the conclusions we have reached, it follows that the trial court erred in each of its conclusions of law.

The judgment is therefore reversed, with instructions to the trial court to restate its conclusions of law, in favor of appellants, and in accordance with the conclusions above announced, and to render judgment thereon accordingly.

Ibach, P. J., Dausman, Caldwell, Batman and Hottel, JJ., concur.

ON PETITION FOR REHEARING.

DAUSMAN, J.—It was with considerable reluctance that I gave my consent to the decision in this cause. Having considered the petition for rehearing and the briefs thereon, I am thoroughly convinced that a rehearing should be granted.

NOTE.—Reported in 115 N. E. 1025, 116 N. E. 861. Wills: time to which words of survivorship refer in devise or bequest of remainder after life estate, 14 Ann. Cas. 706. See under (6) 40 Cyc 1650; (8) 40 Cyc 1645, 1666; (9) 40 Cyc 1675-1681.